[S. F. No. 9029. Department One.—August 17, 1920.]

In the Matter of the Guardianship of the Person of HELEN ANTHONY HAWKINS, a Minor. GEORGE W. HAWKINS, Appellant, v. JOHN T. MERRITT, Respondent.

[1] GUARDIANSHIP OF MINOR—ISSUE OF ABANDONMENT AND INCOMPETENCY ON PART OF FATHER — SUFFICIENCY OF PLEADINGS.—In a proceeding for letters of guardianship of the person of a minor brought by the maternal grandfather and contested by the father, the pleadings are sufficient to raise the issue of abandonment and incompetency on the part of the father, where he alleged in his answer to the petition that he was in all respects capable, ready, able, and willing to assume the duties of guardianship.

[2] ID.—LACK OF FITNESS OF FATHER—FINDING SUPPORTED BY EVIDENCE.—A finding that the father of a minor is not a fit or competent person to have the custody of the child is sufficiently supported by testimony of the unsavory reputation of both the father and his present wife prior to the divorce of the child's parents, notwithstanding the absence of evidence impeaching the testimony of their present good reputation.

[3] ID.—ABANDONMENT OF MINOR BY FATHER—FINDING SUSTAINED BY EVIDENCE.—A finding of abandonment of a minor by its father is sufficiently sustained by evidence that prior to the divorce of its parents he frequently left his wife and child for extended periods without indicating where he could be found, habitually neglected and ignored the child, and that since the divorce he had done nothing for it, except to make the payments for its support in accordance with the decree of divorce.

[4] PARENT AND CHILD—RESIDENCE OF UNMARRIED MINOR—ABANDONMENT BY FATHER.—The general rule declared in section 52, subdivision 4, of the Political Code that the residence of the father during his life is the residence of the unmarried minor child does not apply when the child is under the age of fourteen years and has been abandoned by the father, for in such case he forfeits the guardianship of the child and can no longer claim its custody, and its residence is the place to which it is removed by those who intend to give it a permanent home.

APPEALS from an order of the Superior Court of Sonoma County appointing a guardian of the person of a minor and from a decree directing the issuance of letters of guardianship. Thomas C. Denny, Judge. Affirmed.

The facts are stated in the opinion of the court.

Pillsbury, Madison & Sutro and C. C. Sullivan for Appellant.

Samuel Rosenheim for Respondent.

LAWLOR, J.—Petition by John T. Merritt for letters of guardianship of the person of Helen Anthony Hawkins, a minor. The petition was granted. George W. Hawkins, the father of the minor, contested the petition, and has taken two appeals—one from the order appointing petitioner guardian, and the other from the decree that letters of guardian-

4. General right of father to appointment as guardian of minor child, note, 33 L. R. A. (N. S.) 868.

ship issue to him. The record of the appeals is presented under the alternative method.

Helen Anthony Hawkins is the only child of appellant and Ethel A. Hawkins, the deceased daughter of respondent. The minor was born in 1913. Her father and mother were married in 1905, and for at least one year prior to March 22, 1917, were living in Arizona. On the last-mentioned date Mrs. Hawkins obtained a final decree of divorce from appellant, the validity of which is not questioned. By this decree the custody of the little girl was awarded to the mother, with whom the child lived until October 14, 1918, when the former died. Within a few days thereafter petitioner caused the minor to be brought to his home in Petaluma, Sonoma County, and on October 24th he filed this petition in the superior court for that county, setting forth that the minor was a resident therein. On October 22d appellant sued out a writ of *habeas corpus*, seeking the custody of the child. Both proceedings were heard together, and the writ was discharged. In the matter of the guardianship the court found *inter alia* that appellant had "knowingly and willfully abandoned" the minor; that appellant was "not a fit or proper or competent person" to have her care or custody, and that respondent was fit and competent to be appointed guardian. Accordingly, the court ordered on December 31st that respondent be appointed guardian, and on January 13, 1919, that letters of guardianship issue.

[1] 1. We shall first consider appellant's claim that "the pleadings are insufficient to raise the issue of abandonment or incompetency." In making this contention appellant has apparently ignored the allegations of his answer that he "is the father of the above-named minor . . . and is in all respects capable, ready, and willing . . . and under the laws of the state of California entitled to obtain the care, custody, and control of said minor, and that he is capable, ready, able, and willing to properly provide and care for said minor." These allegations were deemed denied, and it thus became an issue whether appellant was "capable, ready, able, and willing" to assume the duties of guardianship. The pleadings were, therefore, sufficient to raise the issues of appellant's abandonment and incompetency.

2. Appellant's second contention is that there was "no showing that the father was unfit or incompetent to discharge

the duties of guardianship.'' We think the evidence was amply sufficient. Mrs. Theodore Kohn testified that she had been acquainted with appellant and his deceased wife; that on one occasion the witness and her husband had visited the wife at her home in Arizona prior to the divorce; that on this occasion, in appellant's absence, the wife had told the witness that appellant neglected the child; that the witness had seen appellant kick and otherwise abuse his wife; and that the witness saw a letter written by appellant to the mother in which he made no mention of the child.

The evidence was uncontroverted that, prior to the divorce, appellant mistreated his wife and habitually neglected the child, and that for a considerable time he occupied questionable relations with an unmarried woman whom he has since married and who is his present wife, residing with him in the state of New York.

Regarding appellant's life in Arizona, J. H. Knost testified that, according to his knowledge, appellant occasionally associated with lewd and depraved women at Globe, Arizona; that he indulged in the excessive use of intoxicating liquors; that subsequent to the beginning of his relationship with his present wife he would leave home, giving no information as to his whereabouts and failing to communicate with the mother or child; that he gave the latter practically no attention except in the way of sending her money in accordance with the decree of divorce; and that after the divorce he never visited or wrote to the child; that the divorce was granted because of the illicit relations between appellant and his present wife; that the reputation of the latter was such that the witness did not consider her capable of properly raising or instructing the child; that her reputation was that of an immoral woman; that he had seen telegrams signed by her and addressed to appellant denoting improper relations between them before the divorce; that appellant had told him of visits he had made to her prior to the divorce, and that it was commonly understood among his associates that she was a woman of questionable character.

John M. Wyatt stated in his deposition that he had known appellant since 1904; that for the past few years appellant had been drinking to excess; that he was decidedly unkind to the mother of the child; that on or about October 10, 1916, the witness had seen him kick her out of bed, and at

other times slap her face and kick her; that appellant paid "very little attention" to the minor; that "at times in the house he didn't care to have her around him at all"; that appellant had paid no attention to the child since the divorce; and that his present wife "had the reputation of leading a very fast life in many different ways, as to drinking and being intimate with men."

James E. Nelson, who was assistant city attorney of Phoenix, Arizona, during 1916, testified that prior to the divorce the present Mrs. Hawkins and another woman were arrested by the police on a charge of conducting a disorderly house and that the former was a disturbing element in Phoenix, "causing the police a great deal of trouble by reason of numerous drunken parties which she and her friend attended."

L. T. Sutherland, captain of police at Phoenix, testified that she had registered at the Ford Hotel in Phoenix in a room adjoining that of appellant before the divorce, and that her reputation with the police department of Phoenix was that of an ordinary prostitute.

George Brisbois, chief of police of Phoenix; Miss Harriet J. Oliver, chief clerk in the office of the Secretary of State of Arizona; Alpheus Harding, a business man of Tucson, Arizona; Kirke T. Moore, county attorney of Pima County, Arizona, and Alice M. Birdsall, an attorney of Phoenix, testified that appellant had frequently associated with his present wife before his divorce; that her reputation was that of a common prostitute, and that he neglected the mother and child.

The appellant produced a score of depositions. Some of his witnesses testified to the good reputation of his present wife and himself in New York and that she was fond of children; but none of them had been acquainted either with her or appellant in Arizona. William Mueller testified that her reputation at her home in Hillside, Arizona, was good, but admitted that he could not testify as to her reputation for chastity, virtue, and morality in Phoenix, where she resided during the years 1916 and 1917. Mrs. F. E. Marum, assistant postmaster at Hillside, testified that appellant and his present wife had stopped at the hotel at which the witness lived, but her mother stated that she did not know that her daughter had gone to the hotel. Her father was asked

where his daughter lived in Phoenix, and he answered, "I could not say." Appellant testified in his own behalf, but only as to his willingness to take care of the child, and the present Mrs. Hawkins did not testify at all.

Section 246 of the Civil Code provides: "In awarding the custody of a minor, or in appointing a general guardian, the court or officer is to be guided by the following considerations: 1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; . . . 3. Of two persons equally entitled to the custody in other respects, preference is to be given as follows: (1) To a parent; (2) To one who was indicated by the wishes of a deceased parent; . . . 4. Any parent who knowingly or willfully abandons . . . his minor child under the age of fourteen years, forfeits the guardianship of such child; . . . " (See, also, *Guardianship of Vance,* 92 Cal. 195, 198, [28 Pac. 229]; *Guardianship of Imperatrice,* 182 Cal. 355, [188 Pac. 48].) And the rule is well settled that "the primary consideration for the guidance of the court is 'the best interest of the child with respect to its temporal and its mental and moral welfare,' . . . and the conclusion reached will not be set aside on appeal unless it was reached as¹ the result of an abuse of discretion." (*Matter of Allen,* 162 Cal. 625, [124 Pac. 237]. See, also, *Guardianship of Vance, supra; Guardianship of Lewis,* 137 Cal. 682, [70 Pac. 926]; *Lawrence* v. *Thomas,* 84 Iowa, 362, [51 N. W. 11].)

In the instant case the evidence bearing upon appellant's fitness and competency to perform the duties of guardianship was involved throughout in conflict. While some of appellant's witnesses testified to the good reputation he and his present wife enjoyed in New York, and others to her good reputation in Arizona, none of them stated what *his* reputation was in the latter state. Respondent's witnesses testified, as we have seen, that the reputation of both in Arizona was unsavory, and that he had neglected and abandoned his former wife and child. Appellant claims "that the trial court totally disregarded the fact that the testimony . . . in no way, directly or indirectly, questioned the present reputation or character of George W. Hawkins or Mrs. Hawkins, his present wife." The trial court, however, was entitled to consider all the evidence in determining whether appellant was fit and competent to be appointed guardian.

The testimony of his witnesses at most merely raised a conflict in the evidence on this question. It was said in *Guardianship of Imperatrice, supra,* "When resolving the question of the guardianship of children, the court is controlled by what appears to be for their best interest. . . . This rule requires no citation of authority." Assuming for the purposes of this discussion that a father's right to the custody of his child revives upon the death of the mother, who had been awarded the custody under a decree of divorce, yet it must be shown that the minor's interest will be conserved by recognizing the father's right. (*Estate of White,* 1 Cof. Prob. Dec. 128.) **[2]** In our opinion the evidence is amply sufficient to support the finding that appellant is "not a fit or competent person to have the custody of the child."

3. We shall now consider appellant's claim "that there was no evidence that the minor was deserted or abandoned by its father." *Estate of White, supra,* lays down the rule that "where a husband deserts his wife, who is left to care and provide for their infant child, this will be considered as an abandonment of the child upon the father's application for guardianship after the mother's death." It appears that prior to his divorce appellant frequently left his wife and child for extended periods without indicating where he could be found; that he habitually neglected and ignored the child; and that since the divorce he has done nothing for the child, except to make the payments for its support in accordance with the decree of divorce. **[3]** We think this evidence was clearly sufficient to sustain the finding of abandonment. The fact that he complied with the decree is not sufficient to overcome the finding that he abandoned the child.

On the point of abandonment appellant cites *Guardianship of Snowball,* 156 Cal. 240, [104 Pac. 444]. In that case, however, it appears that the mother, seeking the guardianship as against the children's aunt, had not been divorced from their deceased father. The court said: "At most there was an offer to prove temporary absences, accompanied by statements which do not in any way evidence an intent to surrender parental rights." The case is plainly distinguishable from the one at bar on the facts.

4. We now turn to a discussion of appellant's contention that, "in the absence of evidence showing that the minor was a resident or inhabitant of the county of Sonoma, . . . the

court was without jurisdiction to hear and determine the petition.'' Section 1747 of the Code of Civil Procedure, under which this proceeding was instituted, provides: ''The superior court of each county . . . may appoint guardians for the persons . . . of minors . . . who are inhabitants or residents of the county.'' *Guardianship of Vance, supra,* is authority for the general rule that '' 'the residence of the father during his life . . . is the residence of the unmarried minor child.' (Pol. Code, sec. 52, subd. 4.) [4] But this rule does not apply when the child is under the age of fourteen years and has been abandoned by the father. In such case he forfeits the guardianship of the child, and can no longer claim its custody.'' And it is said in 19 Corpus Juris, at page 412: ''Abandonment by the father prevents domicile of the child from following that of the father.'' (See, also, *People* v. *Dewey,* 23 Misc. Rep. 267, [50 N. Y. Supp. 1013].) It is held in *Cannon's Estate,* 15 Pa. Co. Ct. Rep. 312, that since residence is a matter of intention and a minor cannot form such intention for himself, his residence, if the parents be dead, is where he is removed by those who intend to give him a permanent home elsewhere. Although in the instant case only one of the parents is dead, yet, since the surviving parent has, by abandonment, forfeited his right to the care and custody of the child, the rule last stated will apply. It appears that respondent and his wife have brought the minor into their home in Sonoma County with the intention of educating and caring for her as their own child. It is clear that the residence of the minor was in Sonoma County within the meaning of the jurisdictional requirement of section 246 of the Civil Code and section 1747 of the Code of Civil Procedure.

Decree and order affirmed.

Shaw, J., and Olney, J., concurred.