[Civ. No. 78. Fourth Appellate District.—December 9, 1929.]

In the Matter of the Guardianship of LYDA LYNN BENS-
FIELD (a Minor). JESSIE LYNN, Respondent, v.
H. F. BENSFIELD, Appellant.

446

Duckworth & Harrison for Respondent.

Golden & Kaufman and Arthur V. Kaufman for Appellant.

BARNARD, J.—The facts, as shown by the evidence, are as follows:

Early in January, 1929, appellant and his wife were living in San Diego. The wife was subject to epileptic spells, and because of her ill health, her brother, H. C. Lynn, husband of respondent, brought them to San Bernardino, took them into his home, and gave appellant employment as an automobile salesman. Thereafter, on January 29, 1929, the minor, Lyda Lynn Bensfield, was born, and on February 20, 1929, the mother died. The child was a weakling and needed especial care. The respondent, with the consent of appellant, took charge of the infant and, under the advice of a child specialist, fed the baby partially from her own breast and partially on a special formula of prepared food. Under the care given, the child had come up to normal weight. For nearly two months after the birth of the child the appellant made his home with respondent and her family. Difficulties having arisen over the alleged conduct of appellant, he left respondent's home, His demand for the possession of the child was refused. Respondent filed this action, asking to be appointed guardian of the child, alleging that to remove the child from her care and custody would have a tendency to endanger the life of the minor, and that the father was not a fit and proper person to have the care, control and custody thereof. After a trial, the court entered an order appointing the respondent guardian of the person of said minor, and the father has appealed. While he concedes that the child would be well cared for by respondent, he insists upon his natural and legal right as a parent to the custody of his offspring.

It is insisted by appellant that the court made no findings of fact of any kind, and thereby erred. It is conceded that no findings were made by the court, other than the following:

"In the Superior Court of the State of California, in and for the County of San Bernardino.

"In the Matter of the Guardianship of Lyda Lynn Bensfield, a minor.

"Order Appointing Guardian.

"The petition of Jessie Lynn for the appointment of herself as the Guardian of the person of Lyda Lynn Bensfield, said minor, coming on regularly the 8th day of May, 1929, to be heard, said petitioner appearing with her attorneys,

Duckworth and Harrison, and H. F. Bensfield, objector to the appointment of said Jessie Lynn, and petitioner for the appointment of himself as guardian of said minor, appearing in person and with his attorneys, Golden and Kaufman, and after the introduction of evidence by the respective parties, the matter was submitted to the Court for decision, and after due deliberation, the Court finds that all the allegations of the petition of Jessie Lynn are true, and that all the allegations of the petition and objections of H. F. Bensfield, in conflict with the petition of Jessie Lynn, are untrue, and that Jessie Lynn is a fit and proper person to be appointed guardian of the person of said minor, and is a fit and proper person to have the care and custody of said minor, and that said H. F. Bensfield is not a fit and proper person to have the care and custody of said minor, and is not a fit and proper person to be appointed guardian of the person of said minor.

"It is Therefore Hereby Ordered, that said Jessie Lynn be and she is hereby appointed Guardian of the person of said minor, Lyda Lynn Bensfield, and that Letters of Guardianship of the person of said minor be issued to her upon her giving a personal bond to Lyda Lynn Bensfield, said minor, in the penal sum of One Hundred and no/100 Dollars, and upon her taking and subscribing an oath according to law.

"Dated May 10th, 1929.

"CHAS. L. ALLISON,
"Judge.

"(Endorsed) filed May 10, 1929.

"HARRY L. ALLISON, Clerk.
"By M. L. ALDRIDGE, Deputy."

■ Beyond question an order appointing a guardian must be based upon findings on the facts essential to sustain such an order. (*Frascona* v. *Los Angeles Ry. Corp.*, 48 Cal. App. 135 [191 Pac. 968] ; *In re Campbell*, 130 Cal. 380 [62 Pac. 613].) ■ And equally beyond question, we think, such findings are contained in the above instrument. There is no rule requiring the findings and the judgment to be incorporated in separate documents. · (*Hopkins* v. *Warner*, 109 Cal. 139 [41 Pac. 868].)

■ It is further argued that, even if the document set forth be deemed to include findings on the facts, appellant

was entitled to a copy thereof before the same were signed by the court. Where findings are ordered by the court, the adverse party is entitled to service of a copy before they are signed by the judge. Even then, in the absence of a showing of prejudice from such failure to serve a copy, the error will be disregarded on appeal. (*Miller* v. *Murphy,* 186 Cal. 344 [199 Pac. 525], and citations therein.) It does not appear from the record herein that the trial court gave any direction for the preparation of findings. Service of the findings was, therefore, not required. (*Hoffman* v. *Guy M. Rush Co.,* 27 Cal. App. 167 [149 Pac. 177].)

The only remaining question is, as to whether there is sufficient evidence to support the findings of the court that appellant is not a fit and proper person to have the care and custody of said minor. The fitness and the competency of the father is the controlling question in a case of this kind. (*Matter of Galleher,* 2 Cal. App. 364 [84 Pac. 352].) Unless the parent be unfit the law presumes the interest of a child will best be subserved by awarding its care to such parent. (*Newby* v. *Newby,* 55 Cal. App. 114 [202 Pac. 891].) There is a *prima facie* presumption that the parent is fit and competent. (*In re Campbell, supra.*) The question of fitness is one of the present time, and a parent, if now competent, does not lose his right because his conduct may have at one time fallen short of being ideal. (*In re Green,* 192 Cal. 714 [221 Pac. 903].) The question is as to the fitness of the parent, rather than as to the welfare of the child (*Estate of Moore,* 179 Cal. 302 [176 Pac. 461]). It has been held that where the father is found to be a fit and proper person to have the care and custody of the child, he may not be deprived thereof, although another home, with more opportunity for fresh air and exercise, might be more beneficial to the delicate health of the child. (*In re Salter,* 142 Cal. 412 [76 Pac. 51].) However, where the question of the health of the child is not one of its general welfare, but one that may quite possibly affect the life of the child, the court may properly take this into consideration as having a bearing upon the fitness of a parent, who is willing to risk a change in order to sustain his legal right. There was some evidence in this case along that line. The child was about three months old at the time of the trial; it had been in a very

bad condition and required special care; and it had been found necessary to institute partial breast feeding, since it had not thrived on the other formula prescribed by the child specialist. Respondent was dividing her own baby's milk with this child. It was also in the evidence that the mother of the child had been, in her lifetime, subject to epileptic fits. The doctor testified that epilepsy is hereditary, that it is now known that those with a tendency to that disease should have a special diet, and that this was being considered in feeding the baby. Upon the question of making any change in the care of the child the doctor testified in part as follows: "Q. Doctor, in your opinion, having had charge of this baby and the treatment of it, do you consider in your opinion, that it would be to the best interest of the baby for it to be taken away from its present course of treatment and care? A. That is a very hard question to answer. If the present condition can be maintained without change, that child can be taken care of anywhere. Q. In other words, if the same course of feeding and care the child now receives is given to it? A. If the child is maintained on its present feeding and hygiene without any change whatsoever, that child could get along. Q. And that takes into consideration the type of food it is getting at this time? A. The type of food and management, and the sacrifices that are entailed with the nurse, such as Mrs. Lynn is giving." The inference could reasonably be drawn by the court, from this evidence, that any change in the care of the infant would be unsafe for its well-being. This could be taken into consideration in reference to the fitness of the father, especially in the absence of any evidence that he could furnish the same care and treatment.

■ There was other evidence that supports the finding of the trial court. Several witnesses testified that appellant usually had the smell of liquor on his breath; one fellow employee testified he saw him daily and that there were only a few times he ever talked to him when he did not have liquor on his breath; and another fellow worker testified he drank too much. There was evidence that some nights he did not come home at all; that once he came home between 8 and 9 o'clock in the morning, stating he had been on a wild party until 4 o'clock; that he usually was out nights until 2 or 3 or 4 o'clock in the morning; that because

of his habit of keeping late hours, he did not attend to business; and that at times (how many is not clear) he went home and went to bed in the daytime. Another fellow employee testified to seeing him drunk on at least one occasion.

The evidence also shows that at another time he came home intoxicated at about 10 o'clock at night, talked to his sister-in-law for about two hours, and then told her he had left a friend outside in his automobile, whom he must take home. He presently returned with the friend, who was so drunk he could hardly stand up and had his coat on crossways. While talking with the sister-in-law, she turned around and saw appellant with his shirt open, and his friend standing there with his clothes off. Upon her remonstrating, and demanding that he get the man out of the house, appellant refused to do so.

There was also evidence that he took no interest in the baby whatsoever; that he himself had stated that he never wanted her, that he had tried to get rid of her before she came, and that he wished the baby had died; and that one day he asked where the fool baby was. And that this is his general attitude toward the baby.

 When there is substantial evidence that sustains the finding that the father is not a fit and proper person to have the care and custody of his minor child, the determination of the question is largely in the discretion of the trial court. (*Estate of Bedford*, 158 Cal. 145 [110 Pac. 302].) Unless this discretion is abused, the action of the court will not be set aside. We think there was sufficient evidence here to sustain the finding complained of.

The order appealed from is affirmed.

Sloane, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 20, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 6, 1930.