[Civ. No. 8782. First Appellate District, Division Two.—January 3, 1933.]

COUNTY OF LOS ANGELES, Petitioner, v. THE SUPERIOR COURT OF ALAMEDA COUNTY et al., Respondents.

Everett W. Mattoon, County Counsel (Los Angeles County), and L. K. Vobayda, Deputy County Counsel, for Petitioner.

Earl Warren, District Attorney (Alameda County), Ralph E. Hoyt, Chief Assistant District Attorney, and James H. Oakley, Deputy District Attorney, for Respondents.

NOURSE, P. J.—This is an original proceeding in *mandamus* to require the respondent superior court to assume jurisdiction over a minor child found to be a resident of Alameda County. The respondent county is joined as a party, but as no cause of action is stated against it, the demurrer of the county is sustained.

From the stipulation of facts it appears that Margarita Altamirano was born December 13, 1917, in Alameda County, the illegitimate child of Anna Castro; that the father of said child is unknown; that Anna Castro has at all times resided in Alameda County; that, shortly after the birth of the child, the mother delivered her to Conception Mendez with an oral agreement that she might adopt the child; that the child lived with Conception Mendez for a period of years in Alameda County, was taken by Conception Mendez to the city and county of San Francisco and later to Los Angeles County; that Conception Mendez received no compensation for the care of said child from any person; and that the child was not adopted by her or by any other person. It is further stipulated that no guardian has ever been appointed for the child and that no person, other than said mother, is liable for its support.

On October 9, 1931, the juvenile court sitting in Los Angeles County, in proceedings regularly had before it, duly

and regularly adjudged said child to be a ward of the court, duly found that she was a resident of the county of Alameda, and duly ordered her case transferred to the juvenile court of the latter county under the provisions of section 13 of the Juvenile Court Law (Deering's Gen. Laws, Act No. 3966). The order and judgment of the court sitting in Los Angeles County recited, as required by the act, all the findings and orders of that court with a summary of the facts and evidence in the possession of the court or probation officer as required by said section. Included therein was the finding that the child was a resident of Alameda County. The respondent court, assuming that none of these matters had been adjudicated, "after a full and fair examination into all the facts pertaining to the matter" and after it "had deliberated carefully and fully upon the evidence so taken and received and after a careful review of the law in the premises" found that the residence of the child was in Los Angeles County and ordered the child transferred back to that county. It is further stipulated that all the facts affecting the residence of the child and of its mother have existed without change as heretofore set forth and do now still so exist; that said child is wholly without means and is being fully and entirely supported by petitioner. It is also stipulated that the respondent court has refused and will continue to refuse to assume or exercise jurisdiction of said case with respect to inquiring into the financial condition of said child and of its mother, or other person charged with its support, or to assume or exercise any jurisdiction in respect to the care and maintenance of the ward under the provisions of the Juvenile Court Law.

Respondent argues that *mandamus* is not the proper remedy, because the Alameda court did take jurisdiction and because an appeal might have been taken from its order. But the court assumed jurisdiction to determine a matter which was beyond its jurisdiction to determine and refused to exercise jurisdiction over the matters which the statute requires it to adjudicate. By the stipulation of facts it appears that respondent will continue to refuse to act because it has decided, as matter of law, that the jurisdiction is in the Los Angeles court and hence *mandamus* is the proper remedy. (*Hennessy* v. *Superior Court*, 194 Cal. 368, 374 [228 Pac. 862].) Whether or not an appeal lies from

the order need not be determined. It is sufficient to say that, under the circumstances, an appeal would not be an adequate nor a speedy remedy.

 The respondent argues that there is a want of due process as to the county of Alameda because if respondent assumes jurisdiction over the child and *if* it is found that the mother is unable to support it, and *if* it is found that the child is destitute and has no means of support, and *if* the court should direct that the expense of the support and maintenance of the child be paid by Alameda County, then the county would be charged without having had its day in court. In matters of this kind the county is not a "person" within the meaning of either the federal or the state Constitution and is not protected by the due process clause of either. (*Riley* v. *Stack, ante,* p. 480 [18 Pac. (2d) 110].) The "parties" to the proceedings had under section 3 of the Juvenile Court Law are the state and the minor, the state appearing *"in loco parentis".* The state is the "party" which assumes the burden of the care of the destitute minor and the apportionment of a part of the expense of that care to the various counties is merely an incident of the exercise of the state's police power over its political agencies and subdivisions.

 The writ must issue because the question of residence is *"res judicata"*—determined in a proceeding before the superior court sitting in Los Angeles County, a court having jurisdiction of both the subject matter and of the parties. The question of residence was one of those jurisdictional facts which the superior court was bound to determine from the evidence produced before it. That fact having been determined in a court of competent jurisdiction, the determination is not open to collateral attack. A similar situation arises in probate proceedings where the question of the residence of the deceased must be determined by the probate court before proceeding with the administration of an estate. That this determination is final and not open to collateral attack has been the rule of the decisions from *Estate of Griffith,* 84 Cal. 107, 110 [23 Pac. 528, 24 Pac. 381], to *Holabird* v. *Superior Court,* 101 Cal. App. 49, 52 [281 Pac. 108], where cases are cited. In all the cases cited the probate court assumed jurisdiction upon a finding that deceased was a resident of that county. But upon the prin-

ciple invoked it would seem to follow that, if the probate court upon a hearing for letters should hold that the deceased was a resident of some other county and should therefore decline to assume jurisdiction such finding would likewise be conclusive and binding against collateral attack in the probate court sitting in every other county.

Though the "res judicata" doctrine was not expressly invoked in these cases it is the underlying principle controlling the question presented here. The reasons for this doctrine are well expressed in 15 R. C. L., page 954, where it is said: "Public policy and the interest of litigants alike require that there be an end to litigation, and the peace and order of society demand that matters distinctly put in issue and determined by a court of competent jurisdiction as to parties and subject-matter shall not be retried between the same parties in any subsequent suit in any court. The doctrine of *res judicata* not only puts an end to strife, but produces certainty as to individual rights and gives dignity and respect to judicial proceedings which otherwise would be endless."

Conformably with this principle the legislature, having first conferred upon the juvenile court of each county special jurisdiction over delinquent minors found "within the county, *or residing therein*" (Juvenile Court Law, Deering's Gen. Laws, Act No. 3966, sec. 3), provided (sec. 13) that "Whenever a petition has been filed in the juvenile court of a county other than that of the residence of a person coming within any of the provisions of this act, or whenever, subsequent to the filing of a petition in the juvenile court of the county where said person resides, the residence of said person is changed to another county, the entire case may be transferred at any time to the juvenile court of the county wherein said person then resides, *and such court must take jurisdiction of the case upon the filing with it of such order.*"

As the underlying purpose of the "Juvenile Court Law" is to enable the state to care for the minor through judicial and administrative control over the parent and guardian, and as the residence of the minor must follow the residence of the parent or guardian, the clear intent of the provisions of section 13 is that the control of each minor should be vested in the juvenile court of the county where

its parent or guardian resided, because the court of that county is better able to enforce the provisions of the act relative to the parent or guardian. For the purpose of effecting the transfer, section 13 provides that "the order of transfer shall recite (a) each and all the findings, orders . . . and (b) that said person resides in or has removed to the county to which said matter has been transferred . . . " The legislature might have added that these findings were final and not open to collateral attack, but this would have been but surplus language, because such is the general rule declared in section 1908 of the Code of Civil Procedure. If, after a cause has been transferred within the terms of the act, new facts and conditions should arise which would warrant a new trial of the issue of residence we would not hold that the former adjudication barred a retrial, but such a case has not arisen here. The juvenile court sitting in Los Angeles, having jurisdiction of the person and of the subject matter, determined the jurisdictional fact of residence and it thereupon became the duty of the respondent to assume jurisdiction of the case *with the issue of residence adjudicated.* In this respect we can see no distinction between a matter of this kind and one arising under sections 397 et seq., of the Code of Civil Procedure, providing for the change of the place of trial of civil actions. Manifestly if a change is ordered on the ground of defendant's residence the court to which the cause is transferred must take jurisdiction and may not retry the issue of residence. There could scarcely be a better illustration of a case where "public policy . . . and the peace and order of society demand that matters distinctly . . . determined . . . shall not be retried" than the case of this helpless minor abandoned by both parents and thrown about from one county to another like a shuttlecock because of a difference in legal conclusions.

When the cause was transferred to the respondent court it became the duty of respondent to take jurisdiction of the case and to make the appropriate orders for the support and maintenance of the child as required by the Juvenile Court Law. It had no jurisdiction to transfer the cause to another county unless the residence of the child "is changed to another county". (Sec. 13.) It is stipulated that there was no "change" in the residence of either

mother or child and that the residence of the mother was at all times in Alameda County. If, as now argued, the respondent court held that the minor had obtained a legal residence independent of her mother and if, for that reason, the respondent refused to proceed under the act, this was not merely an erroneous decision on a matter of law but a refusal to perform a duty specially enjoined by law. (*Temple* v. *Superior Court,* 70 Cal. 211, 212 [11 Pac. 699]; *Cahill* v. *Superior Court,* 145 Cal. 42, 46 [78 Pac. 467]; *Hennessy* v. *Superior Court,* 194 Cal. 368, 373, 374 [228 Pac. 862].) ▆▆ On the point of law involved there can be no controversy. The residence of an illegitimate unmarried minor follows that of the mother. (*Blythe* v. *Ayers,* 96 Cal. 532, 560 [31 Pac. 915, 19 L. R. A. 40]; 9 Cal. Jur., p. 839.) Such residence cannot be changed by the act of the minor or that of his guardian. (Pol. Code, sec. 52, subd. 6.) Abandonment on the part of the parent forfeits the right of guardianship. (Civ. Code, sec. 246, subd. 4; *In re Vance,* 92 Cal. 195, 198 [28 Pac. 229]; *In re Hawkins,* 183 Cal. 568, 576 [192 Pac. 30].) The two cases last cited were guardianship proceedings brought under section 1747 of the Code of Civil Procedure, which authorizes the superior court of each county to appoint guardians of minors "who are *inhabitants* or residents of the county". In each case the rule of the decision was based upon section 246 of the Civil Code, and the parent was held to have forfeited his right to guardianship because of his abandonment of the child. In each case the child was admittedly an "inhabitant" of the county where the proceeding was commenced. In both cases the court, by way of *dicta,* added that the "residence" of the child followed that of those who intended to give it a permanent home. *People* v. *Dewey,* 23 Misc. Rep. 267 [50 N. Y. Supp. 1013], and *Cannon's Estate,* 15 Pa. Co. Ct. Rep. 312, were cited as authority. But section 52 of our Political Code was not considered in either the Vance or the Hawkins case and we do not find a similar provision in the laws of New York or Pennsylvania.

▆▆ It is settled law in this state that there can be but one residence and that that can be changed only by the union of act and intent. (Sec. 52, Pol. Code.) It is equally well settled that a residence cannot be lost until another

is gained. (Idem.) In this case the residence of the minor was the residence of the mother and that residence was not lost until another was gained. By her abandonment of the daughter the mother forfeited her right of guardianship. (Sec. 246, Civ. Code; now found in sec. 1409, Probate Code.) But this did not relieve her of her obligation to support the child. (Sec. 196a, Civ. Code.) In respect to destitute children the main purpose of the Juvenile Court Law is to enforce this obligation upon the parent. To facilitate this enforcement the juvenile court is directed "to inquire into the . . . ability of the parent . . . or other person liable for the support and maintenance of said ward, to pay for the expense of support and maintenance . . . " (Sec. 11.) The same section then authorizes the court to order the parent "or other person liable for the support" of the ward to pay such sums as the court shall deem proper.

Manifestly these portions of the act can be better administered in the county where the parent resides and it would seem to be the clear intention of the act to treat the residence of the parent as the residence of the abandoned child in the provisions of section 13 relating to a transfer. If this were not so there would be no purpose in providing for a transfer. The statute must be interpreted in the light of what the legislature intended to accomplish by it. Taking the act as a whole the only reasonable interpretation is that the legislature referred to the residence of the minor in section 13 in contemplation of the rules determining residence found in section 52 of the Civil Code. Such an interpretation brings us to the conclusion that the residence of an illegitimate unmarried minor is the residence of the mother; that this residence cannot be changed by simple abandonment; and that such a minor so abandoned, and for whom no guardian has been appointed, is a resident of the county wherein the mother resides and continues to be such until another residence is gained by some legal means beyond the mere abandonment on the part of the mother.

Let a peremptory writ issue.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 2, 1933, and an

application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 2, 1933.