[Civ. No. 6316.   Third Appellate District.—October 8, 1940.]

In the Matter of the Guardianship of OLETA SHARP and ONETA SHARP, Minors.

THELMA SHARP et al., Respondents, v. THE CHILDREN'S HOME SOCIETY OF CALIFORNIA (a Corporation), Appellant.

O. C. Parkinson for Appellant.

H. C. Stanley for Respondents.

STEEL, J., *pro tem.*—This appeal is taken by the Children's Home Society of California from an order appointing the petitioners as guardians of two minor children. The appellant society appeared in response to notice and opposed the petition. The principal question presented is that of jurisdiction.

From the record it appears that Oleta Sharp and Oneta Sharp, twins, were born September 26, 1935, at the home of petitioners Thelma Sharp and Robert Sharp in Texas, the illegitimate children of Vena Lawson, now Vena Thompson, a sister of Thelma Sharp. Approximately a year later the mother came to California in search of employment and located at Stockton. She has since married George Thompson. Shortly after Mrs. Thompson departed from Texas the Sharps also came to Stockton bringing the twin children with them and where they have since resided. During the entire period of time since their birth and up to approximately three months prior to the filing of the petition for guardianship herein the children lived with and were cared for by the petitioners. It is the testimony of Mrs. Sharp that before their birth, her sister Vena Thompson, the mother of the twins, told her that she could have the child when it was born; that petitioner then made arrangements with the doctor

to attend her sister and also made the necessary baby clothes; that after the birth the mother, in response to a question by petitioner as to giving her the children, said: ''You can have them, and if you don't want them I don't care what you do with them.'' The testimony shows that the Sharps, after arriving in California, were at times pressed for finances, the husband, Robert Sharp, following the work of seasonal labor and at times working on WPA projects. In the summer of 1938 the petitioner, Thelma Sharp, asked her sister to supply milk for the children, thus assisting in their support. This request apparently was the forerunner to the difficulties which subsequently arose. The mother thereupon contacted the Children's Home Society in Oakland, which in turn sent a representative to investigate the situation with a view to accepting the children for adoption purposes. After such investigation was made, and without in any way advising the petitioner Thelma Sharp of the proposed plan of placing the children in such Home, the mother, on the pretense of taking the children to her home for an afternoon's visit, took the children from the Sharp home and delivered them over to a representative of the Children's Home Society, together with a Relinquishment in the case of each minor child.

Upon learning what had taken place, the Sharps went to Oakland, accompanied by the mother of the children, in an endeavor to regain their custody. Their efforts in this regard were of no avail and the Sharps then applied to the Home Society for leave to adopt the children. This application was not approved by the society. The children were then placed by the society in a private home in Alameda county with the object of subsequent adoption. In the course of approximately six weeks later the instant proceeding for guardianship was commenced in San Joaquin county.

Directing our attention first to the question of jurisdiction of the San Joaquin county court it appears from the record that when the matter came on for hearing before the court below its jurisdiction was first put in issue and evidence was then received on the question of whether or not there had been an abandonment by the mother of the children. The court found there had been such abandonment and therefore concluded it had jurisdiction to proceed with the hearing. Upon the conclusion of the hearing petitioners were appointed guardians of said minor children.

The appellant, Children's Home Society, contends that the court below was without jurisdiction in this proceeding because the minor children were for a period of some three months prior to the filing of said petition actually residing in Alameda county, and, therefore, jurisdiction would rest with the court of the latter county. In answer to this contention respondents cite *In re Vance*, 92 Cal. 195 [28 Pac. 229], as authority for the rule that where a child has been voluntarily placed with another by a parent, with the intent to abandon such child, the residence of such abandoned child is not changed by its surreptitious removal by such parent to another county. *In re Hawkins*, 183 Cal. 568 [192 Pac. 30], is cited to the effect that the general rule that "the residence of the father during his life . . . is the residence of the unmarried minor child" (Pol. Code, sec. 52, subd. 4) does not apply when the child is under the age of fourteen years and has been abandoned by the father, for in such case he forfeits the guardianship of the child and can no longer claim its custody; that its residence then becomes the place where it is removed by those who intend to give it a permanent home elsewhere.

Appellant contends in this regard that the rule just stated fits the instant case exactly as the children were residing in Alameda county with persons who intended to give them a permanent home when the petition herein was filed in San Joaquin county. A further examination of the authorities discloses the case of *County of Los Angeles* v. *Superior Court*, 128 Cal. App. 522 [18 Pac. (2d) 112] (hearing denied in Supreme Court), a case involving jurisdiction in a Juvenile Court proceeding in which the Vance and Hawkins cases, *supra*, are considered and wherein the court's conclusion, we submit, is determinative of the question of jurisdiction here considered. We quote from the opinion, page 529, as follows:

"On the point of law involved there can be no controversy. The residence of an illegitimate unmarried minor follows that of the mother. (*Blythe* v. *Ayers*, [*Ayres*], 96 Cal. 532, 560 [31 Pac. 915, 19 L. R. A. 40]; 9 Cal. Jur., p. 839.) Such residence cannot be changed by the act of the minor or that of his guardian. (Pol. Code, sec. 52, subd. 6.) Abandonment on the part of the parent forfeits the right of guardianship. (Civ. Code, sec. 246, subd. 4; *In re Vance*, 92 Cal. 195, 198 [28 Pac. 229]; *In re Hawkins*, 183

Cal. 568, 576 [192 Pac. 30].) The two cases last cited were guardianship proceedings brought under section 1747 of the Code of Civil Procedure, which authorizes the superior court of each county to appoint guardians of minors 'who are inhabitants or residents of the county. In each case the rule of the decision was based upon section 246 of the Civil Code, and the parent was held to have forfeited his right to guardianship because of his abandonment of the child. In each case the child was admittedly an 'inhabitant' of the county where the proceeding was commenced. In both cases the court, by way of *dicta,* added that the 'residence' of the child followed that of those who intended to give it a permanent home. (*People* v. *Dewey,* 23 Misc. Rep. 267 [50 N. Y. Supp. 1013], and *Cannon's Estate,* 15 Pa. Co. Ct. Rep. 312), were cited as authority. But section 52 of our Political Code was not considered in either the Vance or the Hawkins case and we do not find a similar provision in the laws of New York or Pennsylvania.

"It is settled law in this state that there can be but one residence and that that can be changed only by the union of act and intent. (Sec. 52, Pol. Code.) It is equally well settled that a residence cannot be lost until another is gained. (*Idem.*) In this case the residence of the minor was the residence of the mother and that residence was not lost until another was gained. By her abandonment of the daughter the mother forfeited her right of guardianship. (Sec. 246, Civ. Code; now found in sec. 1409, Probate Code.) But this did not relieve her of her obligation to support the child. (Sec. 196a, Civ. Code.)"

And again the court, interpreting the Juvenile Court Act in contemplation of section 52 of the Political Code, said:

"Such an interpretation brings us to the conclusion that the residence of an illegitimate unmarried minor is the residence of the mother; that this residence cannot be changed by simple abandonment; and that such a minor so abandoned, and for whom no guardian has been appointed, is a resident of the county wherein the mother resides and continues to be such until another residence is gained by some legal means beyond the mere abandonment on the part of the mother."

It therefore appears to be the established rule in this state that the residence of an illegitimate unmarried minor follows that of the mother and so remains until another is

legally gained or established by means other than abandonment of the child.

◼ In the instant proceeding it is without dispute that the mother of the twins was at the date of the filing of the petition herein and for a considerable period of time prior thereto, a resident of San Joaquin county, and applying the foregoing rule, the superior court of the latter county was vested with jurisdiction to hear and determine the guardianship proceeding pending therein.

◼ Appellant further urges as error requiring a reversal that findings were not prepared and served as required by the statute. At the conclusion of the hearing and after the court had indicated its decision, the court directed counsel to ''prepare your order'' which was done and wherein was incorporated the findings of the court on all material facts necessary to sustain such order. This was a sufficient compliance with the statute in such a proceeding and the findings and judgment are not required to be incorporated in separate documents. (*In re Bensfield,* 102 Cal. App. 445 [283 Pac. 112].)

◼ As to the failure to serve a copy of the judgment before it was presented to the court for signature the Bensfield case, *supra,* further holds that where no direction is given for the preparation of findings, service thereof is not required. In *Miller* v. *Murphy,* 186 Cal. 344 [199 Pac. 525], a case where findings were ordered prepared and served by the court, it was held that, standing alone, and in the absence of claim or showing of prejudice, such omission to serve the findings would not be sufficient to justify a reversal. An examination of the record here discloses substantial evidence to sustain the findings and order complained of and we find no prejudice resulting to appellant by reason of not having been afforded an opportunity to submit counter findings.

Other assignments of error urged upon this appeal include misconduct by the court in its examination of witnesses, insufficiency of the evidence as to the fitness of petitioners as guardians and lack of proof as to abandonment. However as already indicated, the judgment finds ample support to sustain it and the court's conduct of the case, as shown by the record, does not indicate any such misconduct as would be sufficient to warrant a reversal. ◼ In guardianship proceedings the court acts for and on behalf of the minor and must necessarily be given considerable latitude in bringing

out the facts. In this regard it is not unusual for the court to take over the examination of a witness or witnesses. The paramount consideration is a determination of what may be for the best interest and welfare of the minor and primarily that question rests largely with the trial court in the exercise of a sound discretion. ▮ We are unable to say that the conclusion reached by the court below was the result of an abuse of such discretion.

The order appealed from is affirmed.

Tuttle, J., and Thompson, Acting P. J., concurred.