[L. A. No. 17219.   In Bank.—Aug. 27, 1941.]

Estate of HARRY C. JANES, Deceased.   IVA A. VROOM, Appellant, v. DOROTHY LEE JANES CURTISS. Respondent.

S. S. Hahn and W. O. Graf for Appellant.

Leo V. Youngworth and J. Harold Decker for Respondent.

TRAYNOR, J.—This appeal is from an order of the superior court denying a petition for the probate of a document alleged to be the last will and testament of Harry C. Janes. The decedent died on December 9, 1938, in the county of Los

Angeles at the age of 66 years. After his death appellant, a chiropractor who had been attending him professionally for several years, found the purported will in a suitcase belonging to him. The instrument on its face is a valid holographic will. Attached to the instrument, however, is a slip of paper, unsigned and undated, on which appears in decedent's handwriting: "This is a copy of my last Will, the original is in my safe deposit box." No other will was found in decedent's safe deposit box or among his effects.

The will offered for probate is dated November 1, 1938, and contains a bequest of $5000 and two automobiles to the appellant. The residue of the estate is left to Dorothy Lee Janes Curtiss, the decedent's daughter, who is named executrix. There is evidence that the night before decedent died he told appellant that he was leaving her $5000 and his two cars, and that he insisted that appellant go to his apartment for a suitcase containing the ownership certificates to the automobiles and instructions as to what should be done after his death. Appellant found in the suitcase the purported will, as well as decedent's life insurance policy, a draft for $250 to be filled out and sent to his daughter, the ownership certificates to the automobiles, instructions concerning his funeral and the disposition of his body, and an authorization to appellant to take charge of his personal effects.

The trial court, finding that the purported will was not decedent's last will and testament and that he died intestate, denied the petition for probate.

Appellant objects to the asserted failure of the trial court to make findings of fact. The court's order, however, included the following: " . . . and the Court being satisfied from said evidence that the instrument offered for probate in connection with said petition for probate of will is not the last will and testament of the said decedent, and that the said deceased died intestate. . . . " ██ Findings of fact may be included in a judgment or order. (*Hopkins* v. *Warner*, 109 Cal. 133, 139 [41 Pac. 868]; *Hibernia Savings & Loan Society* v. *Clarke*, 110 Cal. 27, 32 [42 Pac. 425]; *In re Bensfield*, 102 Cal. App. 445, 448 [283 Pac. 112]. See *Estate of Exterstein*, 2 Cal. (2d) 13, 15 [38 Pac. (2d) 151].) ██ The court's finding was upon the ultimate fact in issue and was therefore sufficient. (See cases cited in 24 Cal. Jur. 975.)

■ Appellant contends that the notation attached to the will is not admissible in evidence and cannot affect the operation of the document as a will because it was not incorporated by reference therein. It is not necessary, however, for the notation to be incorporated by reference since it is admissible, not as part of the will, but upon the issue of testamentary intent. ■ Appellant maintains that the parol evidence rule as applied to wills does not permit the introduction of extrinsic evidence to show that a testator did not intend as his last will and testament an instrument that purports to be such on its face. It is clear, however, that evidence outside the will may be introduced, not to alter its provisions, but to show that it was not intended by the testator to be effective as a will. (Wigmore, Evidence, (3rd ed.) secs. 2413, 2421; *Clark* v. *Hugo,* 130 Va. 99 [107 S. E. 730]; *In re William's Estate,* (Tex. Civ. App.) 135 S. W. (2d) 1078.)

■ The question therefore is whether the decedent's designation of the instrument in question as a "copy" is sufficient, standing alone, to justify the trial court's implied finding that the testamentary intent necessary to make the instrument a valid will was lacking. Since there was no extrinsic evidence as to the meaning attached to the word "copy" by the decedent, the proper interpretation of the notation is a question of law (See 9 Wigmore, Evidence, (3rd ed.) 522; and cases cited in 6 Cal. Jur. 328) which may be reviewed on appeal. (*Texas Co.* v. *Todd,* 19 Cal. App. (2d) 174, 185 [64 Pac. (2d) 1180]; *Wall* v. *Equitable Life Assur. Soc.,* 33 Cal. App. (2d) 112, 117–118 [91 Pac. (2d) 145].)

■ The effect of the notation should be determined in the light of the other circumstances of the case and the policy of the law favoring testacy rather than intestacy. (*Estate of Spitzer,* 196 Cal. 301, 306 [237 Pac. 739].) An interpretation of a will that prevents intestacy is preferred (Prob. Code, section 102; *Estate of Northcutt,* 16 Cal. (2d) 683, 690 [107 Pac. (2d) 607]; *Estate of Fay,* 145 Cal. 82 [78 Pac. 340, 104 Am. St. Rep. 17]), as is a construction favoring validity, in determining whether a will has been executed in conformity with statutory requirements. (*Estate of Wilkinson,* 113 Cal. App. 645 [298 Pac. 1037]; *Estate of Durlewanger,* 41 Cal. App. (2d) 750 [107 Pac. (2d) 477].) "When a man of sound mind and memory, by his own hand and signature, has plainly made a disposition of his property, the courts should

carry out his intention if it can be done without violating the mandates of the law." (*Estate of Fay, supra,* at p. 87.) A will that is complete and valid on its face should not be denied probate except upon the presentation of convincing proof that it was executed without testamentary intent.

The designation of an instrument as a "copy" is not alone sufficient to establish that the decedent lacked testamentary intent in executing the instrument. The word "copy" implies that the instrument so labeled is identical with another instrument. It does not indicate that the "copy" was intended to be less effective as a will than the instrument which preceded it. There is no reason why a testator may not execute two valid wills with identical provisions to insure the execution of his wishes should one of them be accidentally lost or destroyed. If it is properly executed, a copy of a will is in effect the same as a duplicate (*In re Dawson's Estate,* 277 Pa. 168 [120 Atl. 828]. See *Great Western Power Co.* v. *Oakland,* 196 Cal. 131, 136, 137 [236 Pac. 307] ; 1 Burrill's Law Dictionary (2nd ed.) 526), and it is clear that a properly executed duplicate may be admitted to probate. (See 1 Alexander, Commentaries on Wills, 137.)

In the present case the instrument presented to the court for probate is on its face a complete and valid holographic will. It states that it is the testator's "last Will and Testament." (cf. *Estate of Major,* 89 Cal. App. 238 [264 Pac. 542].) The existence of testamentary intent is borne out by the decedent's declaration on his deathbed that he had made a testamentary disposition of his property in accord with the provisions of the instrument in question, by his statement that the suitcase contained instructions as to what should be done after his death, by the presence in the suitcase of all the documents dealing with the disposition of his property and affairs after his death, and by the fact that no other will could be found. The notation designating the will as a "copy" is not sufficient, in the absence of other evidence as to the decedent's meaning, to establish a lack of testamentary intent in executing the instrument as a will.

The decision in *Estate of Harris,* 3 Cal. App. (2d) 606 [40 Pac. (2d) 566], cited by respondent, must be confined to the facts of that case. There, two inconsistent holographic wills were found, each dated the same day and each marked "Copy" upon the face of the document itself. One was

found after decedent's death among letters and receipts in a drawer of her desk, and the other with duplicate income tax reports. There was evidence that at least one original will had existed, and no evidence of continued testamentary intent. Insofar as the opinion in that case is inconsistent with the principles here stated, it is disapproved.

The failure to find the so-called original will after decedent's death does not prevent the probate of the will in question. If a will last seen or known to have been in decedent's possession cannot be found after his death, it is presumed that he destroyed it in his lifetime with intent to revoke it (*Estate of Ross,* 199 Cal. 641 [250 Pac. 676]), and the revocation of one instrument revokes all duplicates. (Prob. Code, section 76.) In the instant case, however, there was no evidence that anyone had ever seen the ''original'' will and the only evidence of its existence was decedent's statement in the notation. The decedent might have intended to execute another copy of his will to be kept in his safe deposit box and failed to do so; but this would not prevent the probate of the will produced. (*Parrott* v. *Parrott's Adm'x,* 270 Ky. 544 [110 S. W. (2d) 272]; 1 Page on Wills (Lifetime ed.) 132. See *In re Zell's Estate,* 329 Pa. 312 [198 Atl. 76].) Under these circumstances, there is no evidence to support the theory of a revocation.

Moreover, when the missing will was a duplicate in decedent's possession, all the facts bearing upon the possibility of revocation must be considered in determining whether a presumption of revocation arises, not solely the circumstance that one of the duplicates cannot be found. (See 35 Harv. L. Rev. 626; 1 Alexander, *supra,* 140.) In the instant case, decedent's statement regarding his bequest to appellant was made only a few hours before his death. Had he desired to revoke his will, he could easily have destroyed the instrument produced. (See *Estate of Thompson,* 44 Cal. App. (2d) 774 [112 Pac. (2d) 937]; *Glockner* v. *Glockner,* 263 Pa. 393 [106 Atl. 731].) Since intent is essential to revocation, (Prob. Code, section 74 (2); 1 Page, *supra,* 764; 1 Alexander, *supra,* 140) these circumstances showing that decedent did not intend to revoke the will prevent any presumption of revocation from arising.

The statute relating to lost or destroyed wills has no application because the petition did not seek to probate a lost

or destroyed will, but a complete, valid holographic will. If valid duplicate wills are executed, either may be probated if there is no evidence indicating that the missing copy was destroyed with intent to revoke, and if there is no basis in its disappearance for a presumption of revocation. The stringent requirements for proof of lost or destroyed wills are imposed to avoid fraud. In the instant case the existence of fraud is precluded by the production of a valid will executed by the testator, together with evidence that it contained the disposition that he wished to make of his property, and that it was in his possession until the time of his death and could have been destroyed by him had he wished to revoke it.

For these reasons, the finding of the trial court was not supported by the evidence and its order denying probate is therefore reversed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., and Carter, J., concurred.