[Civ. No. 15665. Second Dist., Div. One. July 8, 1947.]

Guardianship of CHRISTINE JOYCE KILES, a Minor. FRANK CORTEZ KILES, Appellant, v. EDWARD D. SOUTAR, Respondent.

A. H. McConnell for Appellant.

Joseph A. Ball and George A. Hart, Jr., for Respondent.

DORAN, J.—The present appeal is from a judgment appointing Edward D. Soutar as guardian of the person of Christine Joyce Kiles who is the minor child of the appellant, Frank Cortez Kiles. Edward D. Soutar is the maternal grandfather of the child. Christine Joyce Kiles was born August 12, 1944, to appellant and Jean Marie Kiles, husband and wife. From the briefs of both parties it appears that on December 2, 1945, at Long Beach, California, the appellant "shot and killed his wife, Jeanne Marie Kiles, the mother of said minor child." Immediately thereafter Edward D. Soutar, the maternal grandfather, placed the child in the home of Mr. and Mrs. D. C. Gann of Long Beach where the child now resides.

On December 14, 1945, the respondent grandfather filed a petition setting forth the above facts and asking to be appointed guardian. On December 25, 1945, the appellant

father, then incarcerated in the county jail, filed an answer and objection praying that "the petition of Edward D. Soutar for appointment of himself as guardian . . . be denied, and that contestant herein, Frank Cortez Kiles, father of said minor, be appointed guardian of the person" of said child. The father further asked "That said minor be temporarily placed in the custody of her paternal grandparents, Frank Cortez Kiles, Sr., and his wife, at Dacota, California, until the criminal action now pending against contestant be finally disposed of."

The matter came on for hearing on December 24, 1945, and was then continued until January 25, 1946, and again until January 31, 1946, for the purpose of obtaining reports of the Juvenile Department concerning the appellant's parents, Mr. and Mrs. Joseph M. Kiles, Sr., and for the taking of further testimony. After hearing all the evidence, the trial court found "that the said Frank Cortez Kiles is not a competent, fit or proper person to have the custody of said minor child. . . . that on February 26, 1946, the said Frank Cortez Kiles was sentenced to, and is now confined in, the State Penitentiary at San Quentin, California, upon his plea and the finding of the court that he was guilty of murder of Jeanne Marie Kiles." The court further found that Edward D. Soutar, the maternal grandfather, was a proper person to be appointed guardian of the minor child, and rendered judgment accordingly.

The appellant's brief states the question involved on this appeal as follows: "Was the trial court guilty of an abuse of discretion in granting the petition of the maternal grandfather of a two-year old motherless, female, minor child, for Letters of Guardianship of the person of said child, over the written protest and objections of the natural father of said child." Appellant's main contention is "that the testimony of the petitioner and respondent (Edward D. Soutar) shows clearly and concisely that he was in no position, due to his home surroundings to perform the duties incident to the trust imposed, and that if granted letters it was his intention to place the child in the care and keeping of a Mr. and Mrs. Gann, non-relatives of the child, permanently, or to use his own words 'as long as it lives.' "

The record discloses that Edward D. Soutar, who was appointed guardian, is a divorced man; that Soutar had no facilities to keep the child and did "not want to now; if I had a home of my own I would, but I cannot. I am looking out

for the welfare of the child.'' Concerning Mr. and Mrs. Gann who had the actual custody, Soutar testified, ''I have known Mr. Gann for four years and ever since I first met him I always respected him as one of the finest men I ever knew, and when I met Mrs. Gann I thought the same of her, . . . I have never in my life seen a finer home, and people who respected one another more, and that is why I always, since that time, like to have the baby in a home like that. . . . I intend to keep it (the child) there as long as it lives.'' The report of the probation officer concerning the Gann home is favorable and indicates that the child is receiving good care there. A favorable report was also made by the Alameda County probation officer in reference to the home of appellant's parents in Decoto, California, where appellant desired that the child should be placed.

The appellant, testifying at the hearing, expressed the desire that the child should not be placed under the guardianship of Mr. Soutar, but admitted that if the child should be awarded to appellant, the latter was ''not in a position to take care of it,'' and would place the child with appellant's parents, Mr. and Mrs. Joseph M. Kiles, Sr. The respondent's brief comments on the cross-examination of appellant to the effect that the latter had previously made statements indicating a want of affection and respect for the parents, including a letter to appellant's wife which stated, ''I hate them more than you do. I don't want them. . I want your kind of people that mind their own business.'' Appellant explained these statements by saying that they were made in an attempt to get the wife to return after a separation.

It is argued by appellant that ''the petition of Respondent for Letters of Guardianship was not made in good faith . . . (but) to circumvent the provisions of Section 1407 Probate Code, which provides that a relative of a minor has a priority of right to the guardianship of a minor as against a nonrelative. . . . The real party in interest was Mr. and Mrs. Gann, . . . and Soutar never intended to perform the duties of guardian . . . but to turn the child over to the Ganns 'for life' and that the Ganns would be the actual guardians.'' In this connection, and as showing that the trial court ''agreed with the contention . . . that the Ganns and not Soutar were the real parties in interest,'' appellant quotes the following statement made by Judge Jeffery at the hearing:

''THE COURT: As I understand it, Mr. White, this is tantamount to a guardianship by the Ganns. I like the looks of

the Ganns. . . . The Ganns are not asking for the custody of the child; Soutar is asking for the custody of the child and he is really not the real party in interest.''

Section 1406 of the Probate Code provides that ''In appointing a general guardian of a minor, the court is to be guided by. what appears to be for the best interest of the child in respect to its temporal and mental and moral welfare.'' Section 1407 further provides that ''Of persons *equally entitled in other respects* to the guardianship of a minor, preference is given,'' first, ''to a parent,'' and thereafter, ''to a relative.'' In the instant litigation, as hereinbefore indicated, the mother of the child is dead, and the father, convicted of killing the mother, has been held by the trial court to be incompetent to act as guardian.

It is true, as commented on in respondent's brief, quoting from *In re Bensfield,* 102 Cal.App. 445, 451 [283 P. 112], that ''When there is substantial evidence that sustains the finding that the father is not a fit and proper person to have the care and custody of his minor child, the determination of the question is largely in the discretion of the trial court. (*Estate of Bedford,* 158 Cal. 145 [110 P. 302].) Unless this discretion is abused, the action of the court will not be set aside.'' In the Bensfield case, the appellate court affirmed an order appointing the mother's sister-in-law as guardian where the mother was dead and the court found substantial evidence to the effect that the child's father by reason of his drinking habits, etc., was not a proper person to act as guardian.

The appellant's argument in the present case, it should be noted, is not directed against the qualifications of Mr. and Mrs. Gann to act as custodians of the child Christine. In its strictly legal aspect, then, the complaint may be reduced to the proposition that there was a manifest abuse of discretion in granting a nominal guardianship to the grandfather who had no facilities to care for the child, which nominal or vicarious guardianship was, in the language of the trial judge, ''tantamount to a guardianship by the Ganns.'' It appears that there is substantial merit in this contention.

If, in the opinion of the trial judge, the evidence justified a finding that the father was not a competent person to act as guardian, and that the best interests of the child would be served by the appointment of Mr. Gann or Mrs. Gann as guardian, (a matter upon which no opinion is here expressed),

then it seems that such an appointment should have been made directly. As the matter stands, however, Mr. and Mrs. Gann, nonrelatives of the child, have no responsibility to the probate court or to the minor; on the other hand, the legal guardian is, at most, serving in a mere nominal capacity. Certainly the law does not contemplate such an arrangement, nor can it be said that the best interests of the child are being served thereby. As commented upon in appellant's brief, under the present unsatisfactory arrangement, "there is no obligation upon the Ganns' to feed, clothe or educate the child, and they can turn it back to Soutar any time they see fit, regardless of his ability to properly care for it."

No citation has been presented which in any way tends to justify or authorize what may be termed a "synthetic" guardianship, and the dangers attendant upon establishing such a precedent are obvious and numerous. Moreover, while the trial court, as an individual, might "like the looks of the Ganns," and might well be of the expressed opinion that "probably they think a great deal of the child," nevertheless there was clearly a judicial duty of the highest nature to make a direct appointment of such a guardian as would insure the proper protection of the child's interest. The welfare of a minor child is, and always has been the primary concern of the courts, to be determined in accordance with the facts and circumstances of each particular case.

The respondent's assertion that "An abuse of discretion is never presumed and it must be affirmatively established," quoted from *Wilder* v. *Wilder,* 214 Cal. page 783, 785 [7 P.2d 1032], is doubtless correct, but in the instant case for the reasons hereinbefore given, such abuse is clearly apparent. The books abound in definitions of judicial discretion and attempt to set forth what will constitute an abuse of such discretion. "Discretion when applied to a court of justice means sound discretion guided by law." (4 Burr. 529. vol. 1, Bouvier's Law Dictionary, 884.) At page 94 of the same volume, abuse of discretion is said to be "A discretion exercised to an end or purpose not justified by and clearly against reason and evidence." In *Sharon* v. *Sharon,* 75 Cal. 1, 48 [16 P. 345], it is said that abuse of discretion "does not necessarily imply a willful abuse or intentional wrong. In a legal sense, discretion is abused whenever, in its exercise, a court exceeds the bounds of reason,—all the circumstances before

it being considered.'' Again, in Black's Law Dictionary, at page 11, occurs the following: ''Where a court does not exercise a discretion in the sense of being discreet, circumspect, prudent, and exercising cautious judgment, it is an abuse of discretion.''

For the reasons stated the judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

York, P. J., and White, J., concurred.