[Civ. No. 5273.   Fourth Dist.   Dec. 5, 1956.]

Guardianship of the Person and Estate of PAMELA MARIE WISDOM, a Minor. LOYD EARL WISDOM, Appellant, v. GILBERT N. MOORE, Respondent.

In re LOYD EARL WISDOM, on behalf of PAMELA MARIE WISDOM, on Habeas Corpus.

Roland C. Rutledge for Appellant.

Clayson, Stark & Rothrock for Respondent.

BARNARD, P. J.—This is an appeal by the father of a 6-year-old girl from a judgment appointing the maternal grandfather as guardian of the person and estate of the minor, and denying the appellant's application for a writ of habeas corpus.

The appellant and the mother of the child were married on September 6, 1947, and separated on March 21, 1949. The mother was granted an interlocutory decree of divorce in May, 1949, which awarded her custody of the child and ordered the appellant to pay $35 a month for the child's support. The child was 9 months old at the time of the divorce, and for about a year and a half thereafter the mother and child lived with the mother's parents at Corona. For several years thereafter, the mother lived, with the child, in her own home at Corona and the appellant lived at the nearby town of Pomona. In May, 1954, the mother returned to the home of her parents, later became ill, and died on February 4, 1955. Prior to her death she requested her parents to care for the child, and they agreed to do so.

The appellant married another woman on June 28, 1950, and separated from her on March 10, 1951. He obtained an interlocutory decree of divorce from that wife on October 25, 1951. Fifteen days later that wife filed an action for an annulment of the marriage, alleging that the appellant had falsely represented to her that he loved children and

wanted a family; that after the marriage he informed her that he did not want a family, and did not want to be burdened with family responsibilities; that he refused to permit her to become pregnant; and that she would not have entered into that marriage if she had not believed his representations. The appellant signed a consent that the matter might be heard without notice and as a default, and a decree annulling that marriage was entered on December 6, 1951.

The appellant married another woman on May 29, 1953. They separated in November, 1954, and three weeks later became reconciled. The father moved from Pomona to Waterloo, Iowa, on January 17, 1955, where he was living with his wife, her two children and her mother. He started to work at Waterloo on January 31, 1955, worked a week, and then came to Corona.

On February 10, appellant came to the home in Corona where the child was sick in bed with a temperature of 104 degrees. When the grandmother let him see the child he threw back the covers but was told that the child was very sick and must be kept covered. He told the child that he was going to take her with him when she got well. The grandmother told him he could not take the child, and that he had never acted like a father. He replied that he had seen a lawyer and was going to take the child, and then left. He returned in about 20 minutes and, when the grandmother tried to prevent him from entering the house, he shoved her aside, went into the bedroom, and took the child out of bed. He got as far as the driveway, with no blanket on the child, when the grandmother and her sister succeeded in getting the child away from him. They returned the child to bed and called the police.

On February 9, the maternal grandfather had filed a petition for appointment as guardian of the person and estate of the child, alleging the necessity therefor and that the child had an estate consisting of $1,200 worth of United States Savings Bonds and other property of the value of $800. On February 10, the appellant filed a petition for a writ of habeas corpus for the purpose of securing possession of the child, and a writ was issued returnable on February 14. In addition to the answer and return of the grandparents an affidavit of the attending doctor, dated February 14, was filed in which the doctor stated that the physical condition of the child would not permit her appearance in court on February 14, and that "any attempt to move her would greatly endanger her health."

On February 15, the appellant filed a counterpetition seeking to be appointed as such guardian, alleging that the child has no legally appointed guardian but has an estate which needs the attention of some fit and proper person.

The two petitions for appointment of guardian and the habeas corpus matter were, by agreement, heard together. There was ample evidence at the hearing that the grandparents are responsible citizens of Corona, that they are aged 50 and 48, respectively, and that they have no minor children. The appellant testified that the grandparents were nice people who could provide for the child, and that the only objection he had is that "I feel she should be in my home." He also testified that his salary "at the moment is approximately $300 a month"; that he owned no property; and that "I do have a bank account in Waterloo." He evaded several questions as to the amount of his bank balance but finally said it was about $50. Later on he admitted that he had closed that bank account and had none at the present time. There was evidence that he had not visited the child during the year and a half after his divorce from the child's mother, and had visited the child only once between May, 1954, and February 10, 1955. He testified that he had visited the child about once a week during the intervening period, while the mother was living in her own home, but from the other evidence received the court would have been justified in disbelieving that testimony. The appellant did not allege or attempt to prove that he had ever complied with the court's order that he pay $35 a month for the support of the child, and the evidence indicates that he was in default in that respect. The only evidence in relation to this matter is the testimony of the grandmother who stated, in response to a question, that they were willing that any payments that might be hanging over the head of the appellant for support might be dropped. The grandmother also testified that the appellant had never shown a fatherly interest in the child, so far as she knew. The extent of her opportunity for obtaining such knowledge was fully apparent to the court from the evidence received.

The court found, among other things, that the divorce decree awarding custody of the child to the mother had never been modified; that prior to her death the mother placed the child in the custody of the grandparents; that the child has an estate and the appointment of a guardian of her person and estate is necessary; that the grandfather is a fit and proper person to serve as such guardian; that it is for the best interests

of the child "in respect to her temporal, mental and moral welfare" that the grandfather be appointed such guardian; that it would not be for the best interests of said minor in these respects if the appellant was appointed such guardian; and that the appellant "is not now a fit or proper person to have the custody of said child." The appellant has appealed from the judgment entered in accordance with these findings. The question presented is as to the sufficiency of the evidence to support the finding that the appellant is not a fit or proper person to have the custody of this child.

It is now settled that the custody of a child may not be given to a third person in the absence of a finding that the parent seeking such custody is unfit. (*Stewart* v. *Stewart,* 41 Cal.2d 447 [260 P.2d 44]; *Guardianship of Smith,* 42 Cal. 2d 91 [265 P.2d 888, 37 A.L.R.2d 867].) It is equally well settled that an appellate court is required to consider only the evidence most strongly favoring the respondent and may not reverse a judgment unless there is no substantial evidence which, with the inferences reasonably to be drawn therefrom, will support the judgment. A decision as to whether the evidence supports a finding must necessarily rest upon the evidence in the particular case, and this is especially true with respect to a finding of fitness or unfitness in such a case as this. The meaning of the words "fit" or "unfit" has never been clearly defined in this state, either by statute or decision. It appears from many decisions, however, that many things including such matters as the parent's character, his disposition, his emotional stability, his neglect or indifference toward the child, his trustworthiness, and his acts and conduct, may have a bearing on his present fitness for such purpose, and may be considered by the trial judge in deciding the question of the child's custody. Of necessity, in making such a finding the trial court must be allowed and must exercise a rather wide discretion in weighing the evidence and drawing reasonable inferences therefrom, and in determining what part of the testimony is to be believed. The appearance and manner of the parties and witnesses while testifying may well have an important bearing on a just result, and it is peculiarly true in this type of case that the trial judge is in a much better position to weigh the effect of the evidence than is an appellate court.

It could not be questioned that the evidence here amply supports the findings that the best interests of this child would best be served by appointing the grandfather as her

guardian, and that it would not be best served by the appointment of the appellant as such guardian. In view of the evidence as disclosed by the record it is hard to believe that any judge would hold otherwise. While that matter is not controlling, it is a statutory guide in the appointment of such a guardian (Prob. Code, § 1406) ; it should not be entirely overlooked; and the finding of the trial court with respect to the parent's fitness may well be viewed in the light of the findings in that regard.

Disregarding a part of the appellant's testimony which the court was not required to believe, the evidence strongly indicates that the appellant showed very little interest in this child for some six years and until after the death of its mother. It may also be inferred from the evidence that his sudden interest at that time was based on his feelings against the grandparents, and quite possibly on his desire to control the child's estate, rather than on his affection for the child or upon the natural feeling of a father toward his child. Among other things, this is somewhat corroborated by the fact that he voluntarily consented to the annulment of his second marriage on the ground that he had falsely represented to that wife that he loved children, whereas his real feeling was that he did not want a family and did not want to be burdened with family responsibilities.

The instability of the appellant, both emotionally and otherwise, appears in the evidence of his several marriages. He was married three times in less than six years. The first marriage lasted about 18 months and was dissolved because of his cruelty. The second lasted about eight months and was dissolved because of his fraud. In this connection the court pointed out that the appellant should be considered guilty of a fraud on the court by consenting to an annulment after he already sought and received an interlocutory decree of divorce, in order to end the marriage more quickly. The third marriage had lasted a year and eight months at the time of the hearing, but there was another separation after a year and a half. While there had been a reconciliation, this had only been in effect for some two months, and in view of all of the evidence the judge may well have entertained serious doubts as to the permanence of that marriage. As the court said in *Guardianship of Casad,* 106 Cal.App.2d 134 [234 P.2d 647] : ''After the parent has broken the home of the child once, the court should not be compelled by an ancient law to break its home again against its will, and to its probable detriment.''

The evidence concerning the appellant's forcing his way into the home and attempting to take the child from its sickbed, a few days after the death of its mother, tends to indicate a disregard of the child's welfare and a willingness to gratify his own desires even at the expense of the child's health, and may well be taken as indicating that he was lacking in the feelings, motives and character which are to be considered in determining his fitness to have custody of the child. As was pointed out in a concurring opinion in *Guardianship of Smith,* 42 Cal.2d 91 [265 P.2d 888, 37 A.L.R.2d 867], under some circumstances "the parent's insistence on his right to custody despite the harm that would clearly result to his child will itself be evidence of his unfitness. (*In re Bensfield,* 102 Cal.App. 445, 449 [283 P. 112] ; *Guardianship of Casad,* 106 Cal.App.2d 134, 152 [234 P.2d 647].) " In *Guardianship of McCoy,* 46 Cal.App.2d 494 [116 P.2d 103], *Guardianship of Case,* 57 Cal.App.2d 844 [135 P.2d 681], and many other cases where a finding that a parent is fit has been affirmed, the trial court has been allowed considerable leeway in drawing inferences from the evidence when a contrary inference could well have been drawn. The same rule should be applied with respect to a finding of unfitness, especially when it so clearly appears from the evidence as a whole that the best interest of the child would be better served by the findings made.

While the evidence of the appellant's financial condition and as to the conditions existing in his new home in Waterloo is not controlling and could not be taken as the sole ground for denying custody, these were matters to be considered with the rest of the evidence and at least it must be said that they tend to support the findings made, rather than to indicate that contrary findings should have been made.

Assuming that the evidence would have supported a contrary finding with respect to the fitness of the appellant, it cannot be said that there is no substantial evidence supporting the finding made.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.