[Civ. No. 6121.   Fourth Dist.   Aug. 31, 1959.]

In re BETTY JOSEPHINE BISENIUS, a Minor.   DANNIE L. BISENIUS, Appellant, v. PHYLLIS LORRAINE SCHERBEL, Respondent.

David H. Hayworth for Appellant.

Paul Hitch for Respondent.

SHEPARD, J.—This matter comes before this court on appeal from a judgment denying the petition of Dannie Louise Bisenius, appellant herein, to have the above-named minor, Betty Josephine Bisenius, (hereinafter called Betty), declared free from the custody and control of her mother, Phyllis Lorraine Scherbel, respondent herein.

Betty is a minor child, born April 27, 1947, to respondent and her then husband, Richard Andrew Bisenius (hereinafter called the father). In 1951, respondent became involved with another man, separated from the father, left the family home in California, and taking Betty went to Florida where respondent's parents resided, arriving there about October 11, 1951. In December, 1951, the father went to Florida, took possession of Betty and without respondent's consent brought Betty back to California. The father was granted an interlocutory decree of divorce on October 10, 1952, on the formal ground of extreme cruelty and the custody of Betty was therein awarded to him. On February 6, 1953, respondent went through a marriage ceremony with still another man named Jackson. The final decree of divorce between the father and respondent was entered October 23, 1953. On February 8, 1954, the father was married to appellant herein, and two children were later born to this union. The father died about November 21, 1956, and shortly thereafter appellant was appointed guardian of the person and estate of Betty, which guardianship still continues.

On July 10, 1958, appellant filed her petition to have Betty declared free from custody and control of respondent, basing her petition on section 701, subdivision (a) of the Welfare and Institutions Code. The cause was heard on the merits, the court rendered judgment denying the petition, and appellant has appealed therefrom.

The first contention of appellant is that the evidence was not sufficient to support the finding that respondent did not abandon Betty. The testimony at the trial was partly conflicting, but there was evidence from which the court could

reasonably have believed that at the time of the taking of Betty by the father in December, 1951, respondent did not consent to Betty's permanent removal from her custody; that she attempted at numerous times in the following months and years to communicate with Betty by telephone and letter; that she was unable financially to physically visit Betty until Christmas 1955; that she visited with Betty on Christmas 1955, and in April, 1956; that she was first apprised of the death of the father on June 27, 1957; that she at that time asked appellant for a visit with Betty and was refused; that she sent telegrams and letters to Betty in 1958 and visited Betty in April, 1958; that she believed when she found out about the guardianship that there was no need for her to send support money; that she stated at different times that she would not consent to adoption and that she did not intend to relinquish her parental rights over Betty nor to abondon her.

There is considerable evidence it is true from which the trial court would have been justified in finding that the best interests and welfare of Betty would be served by her remaining within the custody and control of appellant herein. In fact, the trial court in its memorandum opinion did evidence such belief. ■ But we agree with the trial court's statement that:

"The future welfare of the child, however, and the best interests of the child are not issues in this proceeding. The Court is called upon to determine whether or not the natural mother abandoned the child within the meaning of Section 701, Welfare and Institutions Code."

■ The rule in this respect has been settled by a long line of decisions in California:

"In order to constitute abandonment 'there must be an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same.'" (*Guardianship of Snowball,* 156 Cal. 240, 243 [104 P. 444].)

This statement of principle was approved in *Matter of Cozza,* 163 Cal. 514, 528 [126 P. 161, Ann.Cas. 1914A 214], and the court there added: "To constitute abandonment there must be an intention to do so, express or implied, from the conduct of the parent respecting the child." In *In re Cordy,* 169 Cal. 150, 154 [146 P. 532, 534], the expression from the Snowball case was again approved and the court there stated:

"We think rather that the meaning of the word 'aban-

doned' as above given was intended by the makers of the law to dominate the section, and to cause to be read into every part and provision of it the idea that the acts of the parent in relation to the child enumerated in the statute must have been done with an intent to abandon the child. She must have left it to the care and custody of others with that intention, and a like intent must be shown to underlie her failure, if she has failed, to make provision for its support.''

In *In re Hawkins,* 183 Cal. 568 [192 P. 30], the facts were distinguished from those of the Snowball case but the expression of law remained unimpeached. In *In re Landry,* 61 Cal.App.2d 230, 233 [3] [142 P.2d 432], the court made it clear that the question is one of determining whether or not the child has been abandoned within the meaning of said section 701, and is not one of making a wise selection between the petitioner and the children's mother. In *In re Cattalini,* 72 Cal.App.2d 662, 668, [4] [165 P.2d 250], the court again makes it clear that the crucial issue is whether or not the acts of the parent were committed with ''intent to abandon.'' *In re Maxwell,* 117 Cal.App.2d 156 [255 P.2d 87], likewise follows the same general rule, explaining that where a child is taken away from a parent without the parent's consent, either by judicial or other act of third parties, the presumption would not apply unless after such taking the parent voluntarily did other acts indicating intent to abandon, such as willful failure to support.

It is true that the mere statement on the part of the parent that she had no intent to abandon would not, in itself, be decisive, as all the other facts and circumstances must be taken into consideration by the trial court. (*In re Cordy, supra; In re Maxwell, supra.*) And it is also true that mere token contributions, presents or visits would not of themselves be binding upon the trial court. This rule is directly inserted into the section by the Legislature where it says in said section 701, subdivision (a) : ''If in the opinion of the court the evidence indicates that either or both parents have made only token efforts to support or communicate with the child the court may declare the child abandoned by such parent or parents.'' This and other parts of said section make it clear that while the failure to provide for one year is presumptive evidence of intent to abandon, the presumptive evidence may be overcome by opposing evidence and the question of intent to abandon is a question of fact to be decided by

the trial court. (*In re Welch*, 108 Cal.App.2d 466, 473 [3] [238 P.2d 1031].)

█ Appellant next contends that it was error to refuse to admit the probation report in evidence. An examination of the record shows that the trial court repeatedly overruled the objections of respondent to the receipt and consideration by the court of the probation officer's report, and that the trial court in its ruling followed precisely the directions of section 639 of the Welfare and Institutions Code relating to the receipt and consideration by the trial court of said probation officer's report. It is likewise evident to this court from statements of the trial court that it did, in fact, give consideration to said report. The fact that the trial court apparently made an error in its recital of the recommendation of the probation officer does not refute this statement. From a reading of the trial court's memorandum opinion it would appear probable that the word "denied" contained therein is a mere typographical or clerical error. Whether the document was entitled "evidence" or not we think is of no consequence since the court clearly had in mind the proper position of the report as provided by the code section cited and did give it that dignity.

█ Appellant next complains that two witnesses were allowed to testify as to the good reputation of respondent. As was said in *In re Halamuda*, 85 Cal.App.2d 219, 224 [192 P.2d 781] :

"In other words, from its very nature and because of necessary qualifications for doing the work for which it is intended, the juvenile court was not designed as a trial court in the ordinary sense; and its method of operation is very different from the one governing in the trial of criminal cases, mainly because technicalities and formalities are largely eliminated."

The same thought has been expressed in many other cases. Furthermore, the trial court made it clear in his memorandum opinion that he understood that the good or bad reputation of respondent was not the matter at issue, and we are unable to find from a reading of the whole record that the trial court's decision was affected by or would have been in any way different had the two witnesses referred to not been allowed to testify. We find no prejudicial error.

As heretofore indicated, the whole matter became one for factual decision on the question of intent and since there was evidence to support the conclusion arrived at by the trial

court we cannot disturb its decision. ▆ "When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [1] [45 P.2d 183].)

The judgment is affirmed.

Griffin, P. J., and Mussell, J., concurred.

Appellant's petition for hearing by the Supreme Court was denied October 28, 1959.