[Civ. No. 6135. Fourth Dist. Dec. 16, 1959.]

CARL DUNCAN et al., Respondents, v. BURRELL H. GARRETT et al., Appellants.

James Edgar Hervey, Henry F. Walker and C. Hugh Friedman for Appellants.

Donnelley, MacNulty & Butler and Morton Galane for Respondents.

SHEPARD, J.—This is an action to vacate and set aside an order appointing a guardian on the ground that the original order was obtained by fraud. Judgment was had by plaintiffs, and defendants appeal.

From the record before us it appears that the infant, subject of the guardianship proceedings, was born in Las Vegas, Nevada, on June 1, 1955, to Suzanne Van Ornum (now Duncan). Defendants herein had been apprised through a mutual acquaintance of the impending birth of the child and the possibility of receiving it for adoption. They went to Las Vegas, consulted an attorney, paid the medical and hospital

bills for the birth of the child, received through the attorney a relinquishment signed by Suzanne, in which the name of the adopting parents was left blank, received custody of the child, and returned to San Diego. On June 27, 1956, defendants filed their petition in the guardianship proceeding, applied for guardianship of the infant child, and alleged in that petition that the child was illegitimate and that her father's identity and whereabouts were unknown. Guardianship based on this petition was granted July 2, 1956. The judgment of the trial court in the case now before us decreed and declared that the order of guardianship of the infant dated July 2, 1956, in case Number 56444, Superior Court of San Diego County, was null and void, the primary basis of such judgment being grounded on a finding by the trial court that the allegations of the petition regarding illegitimacy and lack of knowledge of the whereabouts of the father were false and fraudulent and known by petitioners to be false and fraudulent at the time the petition was presented to the court. The legal truth of these allegations is therefore the vital factor in this case.

On June 1, 1955 (the date of the child's birth) the mother, Suzanne, was unmarried and the alleged father was married to another woman. Suzanne relinquished the child on June 7, 1955. Carl, the alleged father, became eligible for a final decree of divorce from the other woman July 14, 1955, but no final decree of divorce was obtained at that time. Carl went through a marriage ceremony with Suzanne on July 18, 1955, but that marriage was bigamous and invalid and remained bigamous and invalid for more than a year later, that is, until August 7, 1956. On June 27, 1956, when the defendants filed their petition for guardianship of the child Carl had no legal standing as the father. He had refused at the time of the birth of the child to come and see it or to acknowledge his obligation or parenthood. He did not pay or offer to pay any part of the medical or hospital expenses of birth. He did not receive the child into his own home and acknowledge it as his own. A decree of divorce was obtained by Suzanne from Carl on December 20, 1956, and neither the pleadings nor the judgment in that case recite that the child here under consideration was a child of that marriage. Thus, even though on August 7, 1956, the *nunc pro tunc* pronouncement of the court could by legal fiction turn back the pages of time and make the child legitimate and give the alleged father a legal standing, there is nothing in the law permitting

a *nunc pro tunc* decree to put the brand of perjury on a third party whose statement, at the time he made it, was true. The inescapable conclusion is that the defendants did not allege a falsehood on June 27, 1956, the day they filed their initial petition for guardianship over the child, and that the order appointing defendants guardians on July 2, 1956, was fully within the power and jurisdiction of the court, and was not induced by falsity or fraud. It follows, of course, that the only proper way for the alleged parents to proceed is by a petition in the guardianship proceeding itself, based on facts alleged to have occurred since the original order was made.

This result is not affected by the stipulation of counsel that the child was legitimated by Carl's and Suzanne's marriage ceremony of July 18, 1955. Such stipulation, of course, merely goes to the effectiveness of the legal fiction of the *nunc pro tunc* decree and does not even purport to in anywise affect the veracity of defendants on June 27, 1956. It would not do so even though the stipulation had gone farther than it did. "When a particular legal conclusion follows from a given state of facts, no stipulation of counsel can prevent the court from so declaring it." (*San Francisco Lbr. Co.* v. *Bibb,* 139 Cal. 325, 326 [73 P. 864] ; *People* v. *Singh,* 121 Cal.App. 107, 111 [5] [8 P.2d 898] ; *Valdez* v. *Taylor Automobile Co.,* 129 Cal.App.2d 810, 819 [278 P.2d 91].)

Defendants also point out that equitable relief from a judgment allegedly obtained by fraud is available only where facts are pleaded and proved showing that a different judgment will probably result from a reopening of the proceeding, and that it is incumbent on a plaintiff to allege and show that a meritorious defense to the former action, whose judgment is sought to be set aside, actually existed, citing *Kupfer* v. *MacDonald,* 19 Cal.2d 566, 568 [2] [122 P.2d 271] ; *Bennett* v. *Hibernia Bank,* 47 Cal.2d 540, 554 [11] [305 P.2d 20] ; *Hart* v. *Gudger,* 153 Cal.App.2d 217, 220 [1] [314 P.2d 549]. In view of our conclusion that the original order for guardianship was valid, we find it unnecessary to pass on the application of this last named contention to the case at bar.     In support of defendants' contention that the plaintiffs in this action had no meritorious defense to the original petition for guardianship, defendants offered to prove, *inter alia,* that three weeks before the birth of the child Suzanne attempted to effect a reconciliation with Carl and that he rejected her; that he then told her her problems were her own to deal with as she saw fit ; that he refused to give her any assistance ; that

she called him from the hospital with the same result; that he refused to see the baby, saying he did not want to form any ties; that he denied being the father of the child and disclaimed all responsibility for expenses; that during the life of the child, except for days that he gained custody, he never supported or offered to support the child in whole or in part; that plaintiff Carl Duncan had been convicted of a felony, failure to provide for a minor child; that since June 1, 1958, Carl Duncan has contributed to his present wife and child's support only the total sum of $25 and no more; that on April 4, 1957, in another action, Carl Duncan stated to the court in essence that if defendants' home checked out satisfactorily he would be agreeable to signing a relinquishment for the child; and that neither parent is a fit or proper person to have custody of the child.

Most of these matters so offered to be proved, as well as many other matters that appear in the record, such as the subsequent divorce of Carl and Suzanne on December 20, 1956, their remarriage some months later, Carl's unsavory marriage and child support record were not properly a part of the evidence on the issue pleaded in this matter, and while the truth of such matters was disputed only in minor respects nevertheless the trial court's ruling excluding them was correct. (*In re Bisenius*, 173 Cal.App.2d 518, 521 [1] [343 P.2d 319].) This was a proceeding to set aside and nullify the order on the ground of fraud and was not a proceeding to terminate a valid order. When and if a motion to terminate the order for guardianship comes before the trial court, some or all of these matters may then be cogent to the issue of parental fitness, and we have no doubt the trial court will examine them with the necessary care. (*Guardianship of Wisdom*, 146 Cal.App.2d 635 [304 P.2d 221].)

The judgment is reversed.

Griffin, P. J., and Mussell, J., concurred.