18 Cal.App.3d 973 (1971)
96 Cal. Rptr. 308
Adoption of R.R.R., a Minor.
EDITH M. WALKER, Plaintiff and Appellant,
v.
ROBERT EARL RODGERS, Defendant and Appellant.
KATHLEEN OLSON, Defendant and Respondent.
Docket No. 26147.
Court of Appeals of California, First District, Division One.
July 28, 1971.
*975 COUNSEL
Everitt L. Mossman and Michael G. Ioakimedes for Plaintiff and Appellant and Defendant and Appellant.
Smith & Burstein and Jack B. Burstein for Defendant and Respondent.
*976 OPINION
SIMS, J.
Edith M. Walker, the paternal grandmother of the subject of these proceedings, and Robert Earl Rodgers, the father of the child, have appealed from a judgment in adoption proceedings which adjudged that the mother, Kathleen Olson, had not abandoned her daughter, and that the father had abandoned his child, and which further denied the grandmother's petition for adoption. The grandmother contends that the evidence requires the conclusion that the mother had abandoned her child and that it was error to fail to declare the child free from the custody and control of her mother. The father contends that the evidence does not sustain the finding that he abandoned his daughter so that she should be declared free of his custody and control.
The evidence, when viewed in the light of applicable legal principles, supports the finding of nonabandonment by the mother. With respect to the father, it is questionable whether issue was properly joined on the question of abandonment. If it was, he was not afforded an opportunity to be heard. The judgment must be affirmed with respect to the mother and reversed as to the father on the petition to have the child declared free from parental control and custody, and affirmed insofar as it denied the grandmother's petition for adoption.
The proceedings under review (Adoption No. 819) were instigated by the grandmother's petition for adoption, and her petition to have her granddaughter declared free from the custody and control of her parents, which were both filed on October 2, 1967. The latter petition came on for hearing on December 1, 1967, and the petitioner and the child's mother each appeared with counsel. (The father's appearance is reviewed below.) It was stipulated by those counsel that all of the allegations of the petition, other than the statistical facts, would be deemed denied, and that for all purposes the hearing on the petition would be deemed consolidated with forth-coming proceedings in juvenile court to review the status of the child as a dependent child of that court (Juvenile No. 7056). In addition to the testimony adduced at the hearing on December 1, 1967, the court indicated that it had taken judicial notice of and perused the juvenile court file relating to the father (No. 6028, not a part of the record), the juvenile court file of the mother (No. 5809, made a part of the record), the juvenile court file of the child (No. 7056, made a part of the record) and the file of the proceedings in which the marriage of the parents was annulled (Civil No. 42268, not a part of the record). From the matters in the record and the testimony at the hearing, the following facts appear:
The mother, the respondent in these proceedings, was born January 16, *977 1948. On November 17, 1962, she left home without her parents' consent, and 10 days later a petition was filed with the juvenile court and she was ordered detained pending further hearing. A probation report indicated possible pregnancy as the result of admitted intercourse on an earlier runaway, and she was made a ward of the court under section 601 of the Welfare and Institutions Code as beyond the control of her parents. The probation officer was awarded her care and custody and directed to place her in the home of her parents. On verification of her pregnancy she was placed under the supervision of the county welfare department, and after the birth, July 14, 1963, of a son who was relinquished for adoption, she returned to the home of her parents. Her status was reviewed favorably in November 1963, and the matter was continued for six months. On April 16, 1964, the proceedings and the petition were dismissed.
The father was born November 5, 1947. According to the report filed in connection with the proceedings involving his daughter on April 25, 1963, he was made a ward of the court under the provisions of section 602 of the Welfare and Institutions Code for violation of section 10851 of the Vehicle Code. On July 20, 1964, he married the respondent, and on March 7, 1965, their daughter, the subject of these proceedings was born.
At the time the couple were living in the household of the paternal grandmother, with the latter's brother and her mother and father. The child was brought to this household five days after its birth. According to the grandmother, after several nights with the baby, the mother, so she could get some rest, left the child with the great-grandmother at night. Some three months later the couple moved out and left the baby with the grandmother for a period of six weeks or two months. In August the couple returned, but the father, who was still a ward of the court, was ordered into custody and sent to a boy's ranch for driving without a license, and for possession of beer. In September the mother left with her daughter and established a separate residence. A month later she returned and left the care of the baby up to the grandmother. At the end of the year the grandmother asked her to leave because, as the result of a quarrel with the father on his visit home, the authorities allegedly would not permit the father to visit while she was in the home, and because the grandmother was filing a petition to have the child made a ward of the court.
The petition filed January 3, 1966, by the probation officer, at the instigation of the grandmother, alleges that the child "comes within the provisions of Section 600a of the Welfare and Institutions Code of the State of California, in that: said minor, ... has no parent or guardian capable of exercising proper and effective parental care or control and is in need of such care and control, in that the father of said minor is a ward of the *978 Solano County Juvenile Court and is presently in placement at the Fouts Springs Boys Ranch and on several occasions the mother of said minor has left said minor to be attended by the paternal grandmother without making any payment for said minor's support." On the same day an order was made that the child be detained at the grandmother's home. A probation report filed January 19, 1966, reviewed the background which has been set forth above. It sets forth the complaints of the grandmother concerning the activities of her daughter-in-law, and the latter's denials of any promiscuity or misconduct. It concludes as follows: "This Officer feels that Rhonda's placement with her paternal grandmother would be a suitable one for the time being. She is receiving the care she needs and appears to be loved by all members of the household. Wayne Rodgers, Bob's uncle, who has a good position with Safeway Stores, is paying support for the child until Bob is discharged and finds a suitable job.
"Kathleen is obviously in no position to give her baby a home at the present time, plus the fact that she expresses no great desire to have the child with her.
"Since Kathleen has removed her baby from the paternal grandmother's home in the past, it appears that this child needs the added protection of dependent child status so she won't be subject to the instability and whims of her parents." On July 21, 1966, the child was declared to be a dependent child of the juvenile court and placed under the care of the probation officer.
A probation report, filed January 5, 1967, for the annual review of the child's status, briefly reviews the activities of the mother and father and child for the preceding year. It concludes: "It is felt that for the best interest of this child and for her proper growth and development, she remain in the foster home of her paternal grandmother until such time as the natural mother is able to demonstrate to the Court her ability to provide proper care for her child."
"This child appears to be receiving adequate physical and emotional care. The child's maturation appears to be normal." The recommendation that the child be continued as a dependent child of the court was apparently followed.
In January 1966, it was indicated that the mother had engaged an attorney to terminate her marriage to the father of her child. An annulment was granted April 25, 1966. Apparently the mother lived with various friends, and kept company with different men during 1966 until she returned to her parents' home in October, and fastened her affections on the man she married the following spring. She worked for an electronics firm from the end *979 of October until she was laid off at the end of December due to slack business.
In 1967 her parents sent the mother to Heald's College in San Francisco. For a month she lived with her intended's grandmother so she could attend school, and on April 1, 1967, she married James Olson. On June 5, 1967, she secured regular employment as an IBM key punch operator at $255 per month, and on October 5, 1967, she began the employment in which she was engaged at the time of the hearing at $358 per month. Her husband had been employed as an IBM tab operator for two years at the time of the hearing, and was earning around $432 per month at that time.
A probation report dated December 1, 1967, was later filed in connection with the petition to have the child declared free of parental control. It reviewed the parents' history, and the circumstances concerning the child's care with the grandmother. It concluded "that this child should not be declared free from the custody and control of her parents."
At the conclusion of the hearing the court announced its decision as follows: "As to the findings on the Petition to have... declared free from the care, custody and control of her parents, it is the Court's findings that the Court does find abandonment as to ... father, Robert Rodgers; and finds no abandonment as to the mother, Kathleen Olson." The custody of the child was continued for disposition in the juvenile court proceedings. The record then indicates that on March 19, 1968, the court signed and filed findings of fact and conclusions of law embodying its decision. On March 28, 1968, the State Department of Social Welfare filed its report recommending denial or dismissal of the petition for adoption in view of the failure of the mother to consent, and the court's refusal to deprive her of control and custody of the child.[1] The judgment on the petitions involved in this matter was signed and filed May 9, 1968, and the appeals of the grandmother and the father ensued.

I
At the time the petitions came on for hearing, and at the time the court made the orders appealed from, section 232 of the Civil Code provided in pertinent part: "An action may be brought for the purpose of having any *980 person under the age of 21 years declared free from the custody and control of either or both of his parents when such person comes within any of the following descriptions:
"(a) Who has been left by both of his parents or his sole parent in the care and custody of another without any provision for his support, or without communication from such parent or parents, for the period of six months with the intent on the part of such parent or parents to abandon such person. Such failure to provide, or such failure to communicate for the period of six months, shall be presumptive evidence of the intent to abandon. Such person shall be deemed and called a person abandoned by the parent or parents abandoning him. If in the opinion of the court the evidence indicates that such parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by such parent or parents.
".... .... .... .... . .
"(b) Who has been cruelly treated or neglected by either or both of his parents, if such person has been a dependent child of the juvenile court, and such parent or parents deprived of his custody for the period of one year prior to the filing of a petition praying that he be declared free from the custody and control of such cruel or neglectful parent or parents.
"(c) Whose parent or parents are habitually intemperate, or morally depraved, if such person has been a dependent child of the juvenile court, and the parent or parents deprived of his custody because of such intemperance, or moral depravity, for the period of one year continuously immediately prior to the filing of the petition praying that he be declared free from the custody and control of such habitually intemperate or morally depraved parent or parents."
The grandmother's petition to have the child declared free from parental custody and control contains allegations directed at each of the foregoing three grounds.[2] The court found that these allegations were untrue with *981 respect to the mother, and concluded that the child had not been abandoned by her mother, and gave judgment accordingly.
Both sides rely upon In re Conrich (1963) 221 Cal. App.2d 662 [34 Cal. Rptr. 658], in which the requisites of abandonment under subdivision (a) of section 232 are set forth as follows: "(1) The child must have been left with another, (2) without provision for support or without communication from either or both of his parents for a period of one year (and token efforts to support or communicate may not, in the trial court's judgment, prevent abandonment), (3) intent to abandon, (4) failure to provide or communicate for one year is presumptive evidence of intent to abandon." (221 Cal. App.2d at p. 666. See also In re Edwards (1930) 208 Cal. 725, 735 [284 P. 916]; Matter of Cozza (1912) 163 Cal. 514, 527-528 [126 P. 161] (overruled on other grounds Adoption of Barnett, 54 Cal.2d 370, 378 [6 Cal. Rptr. 562, 354 P.2d 18]); In re Morrow (1970) 9 Cal. App.3d 39, 52 [88 Cal. Rptr. 142]; In re Salazar (1962) 205 Cal. App.2d 102, 107 [22 Cal. Rptr. 770]; In re Bisenius (1959) 173 Cal. App.2d 518, 521-522 [343 P.2d 319]; and In re Jones (1955) 131 Cal. App.2d 831, 834 [281 P.2d 310]; and cf. Estate of Akers (1920) 184 Cal. 514, 521 [194 P. 706]; and Guardianship of Rutherford (1961) 188 Cal. App.2d 202, 206 [10 Cal. Rptr. 270, 98 A.L.R.2d 410] (guardianships); and In re Croze (1956) 145 Cal. App.2d 492, 495 [302 P.2d 595] (habeas corpus).)
"Under subdivision (a) no intent to abandon can be inferred or presumed from the mere fact that the mother (and the father) so conducted themselves that they were deprived of the custody of their children." (In re Morrow, supra, 9 Cal. App.3d 39, 52. See also Matter of Cozza, supra, 163 Cal. 514, 522-523 and 528-529; In re Conrich, supra, 221 Cal. App.2d 662, 666-667; In re Zimmerman (1962) 206 Cal. App.2d 835, 842-843 [24 Cal. Rptr. 329]; In re Williams (1955) 133 Cal. App.2d 515, 518 [284 P.2d 510]; and In re Jones, supra, 131 Cal. App.2d 831, 836.)
In re Salazar, supra, contains a compendium of the facts bearing upon abandonment under the statutory provisions. The court noted, "... mere acquiescence in support by others [citations]; or failure to pay for maintenance when no demand therefor has been made [citations], or no ability to provide is shown [citations], by itself, does not prove an intent to abandon." (205 Cal. App.2d at p. 107; and see Estate of Akers, supra, 184 Cal. 514, 521; and Guardianship of Rutherford, supra, 188 Cal. App.2d 202, 208.) In Estate of Akers, supra, the court stated, "Nor should the forfeiture of parental rights be decreed against a parent who has merely acquiesced in the support of the child by other relatives. [Citations.]" (184 Cal. at p. 521. Cf. In re Conrich, supra, 221 Cal. App.2d 662, 667.)
The grandmother contended that since the parents had been deprived of *982 the custody of the child for over one year the provisions of subdivisions (b) and (c) of section 232 were applicable. The trial court pointed out that it was only alleged and found in the juvenile court proceedings, at the time the petition was filed and the child was adjudged a dependent child of the juvenile court, that she had no parent or guardian capable of exercising proper and effective parental care or control, and was in need of such care and control because her father was a ward of the juvenile court in placement at a boy's ranch, and her mother had left her on several occasions to be attended by the paternal grandmother without making any payment for the child's support. There is nothing to suggest that the child was ever cruelly treated by either or both of her parents (see subd. (b)). The question of neglect, as distinguished from the abandonment contemplated by subdivision (a), would appear to be rebutted by leaving the child in an environment where she is known to be getting good care. In any event, "It is reasonable to consider under subdivision (b) whether the conditions which gave rise to the cruelty or neglect [if either ever existed] still persist." (In re Morrow, supra, 9 Cal. App.3d 39, 56.)
Subdivision (c) was construed by this court in In re Zimmerman, supra, as follows: "On analysis, the particular subdivision appears to prescribe three conditions: 1) that the parent or parents of the `person who should be declared free' are morally depraved; 2) that the person has been a ward of the court for the defined period of a year; and 3) that the parent or parents have been deprived of his custody for, inter alia, moral depravity for such period of time. We feel that the statute by using the present tense `are ... morally depraved' (italics added) intended that such condition of moral lapse be found to exist at the time of the hearing and to be of such a character that the court would be justified in applying the drastic remedy provided for." (206 Cal. App.2d at p. 844.)
The grandmother insists that the court disregarded the evidence of the mother's past transgressions. She relies on the following statement, "It was, of course, proper to consider her mode of living and conduct up to the time of the hearing, but it was also proper for the trial judge to take into account the other incidents referred to herein  all of which had occurred during the past few months. In Dupes v. Superior Court, 176 Cal. 440..., a juvenile court matter, it is said, at page 442, that `In passing upon the question regarding the fitness or unfitness of the mother, the court will be aided by evidence of her conduct in the past....' To the same precise effect is In re Holt, 121 Cal. App.2d 276, 279.... See also Guardianship of Coughlin, 129 Cal. App.2d 290...." (In re Corrigan (1955) 134 Cal. App.2d 751, 757 [286 P.2d 32].) Neither In re Corrigan, nor the cases cited in the foregoing quotation, involved the question of permanent severance of the parental relationship. Each was concerned with the power of a *983 juvenile court or a probate court in a guardianship proceeding to regulate the custody of children, and to deprive a parent of custody in the exercise of that power. (See 134 Cal. App.2d at p. 754; 176 Cal. at p. 442; 121 Cal. App.2d at p. 278; and 129 Cal. App.2d at p. 291.)
In re Zimmerman, supra, noted, "Wardship proceedings obviously involved the determination of the custody of the subject child from time to time during the necessary jurisdictional period and under the supervision of officers of the juvenile court. Such proceedings affected parental control, did not in all instances necessarily preclude it [citation] and did not in any way sever or bring to an end the natural relationship subsisting between parent and child. It may be said that such proceedings did not contemplate absolute finality of decision, since they contemplated various orders and modifications of them as dictated by the child's best interests." (206 Cal. App.2d at pp. 842-843.)
(1) In the application of the principles set forth above to the facts of this case, this court is governed by the following principles: "It is neither the duty nor the right of this court to resolve conflicts in the evidence, pass on the credibility of the witnesses, or determine where the preponderance of the evidence lies. These are all matters to be decided by the trier of fact in the court below. (2) The power of any appellate court commences and terminates with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. (3) All conflicts must be resolved in favor of respondent on appeal and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. (4) Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact. (5) All evidence favorable to respondent is assumed true and the unfavorable is discarded. If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed." (Garrett v. Duncan (1959) 176 Cal. App.2d 296, 298-299 [1 Cal. Rptr. 461]. See also Adoption of Oukes (1971) 14 Cal. App.3d 459, 466 [92 Cal. Rptr. 390]; In re Morrow, supra, 9 Cal. App.3d 39, 46-47; In re Conrich, supra, 221 Cal. App.2d 662, 668; In re Zimmerman, supra, 206 Cal. App.2d 835, 845-846; In re Salazar, supra, 205 Cal. App.2d 102, 106-107; In re Bisenius, supra, 173 Cal. App.2d 518, 522-523 and 524; In re Williams, supra, 133 Cal. App.2d 515, 518; In re Jones, supra, 131 Cal. App.2d 831, 836; and In re Nash (1951) 102 Cal. App.2d 220, 222 [227 P.2d 270]. Cf. In re Miller (1966) 244 Cal. App.2d 454, 460-461 [53 Cal. Rptr. 211]; and In re Corrigan, supra, 134 Cal. App.2d 751, 754-755.)
*984 (6) From the evidence adduced in this case the trial court was warranted in finding that the child's mother had not failed to communicate with her daughter with the intent to abandon her, that the mother had only failed to provide for her daughter because, on the one hand, no demand had been made upon her for such support and on other occasions she was without the wherewithal to provide such support; that she had not neglected her daughter because her relatives had voluntarily undertaken to provide for her care and support; and that any suggestion that she was morally depraved was either not sustained by the weight of the evidence, or, in any event, was rendered immaterial by evidence of her reformation and apparent rehabilitation.
The finding and judgment that the child should not be declared free of the control and custody of the mother is sustained by the evidence. Since the mother did not consent to the adoption, the court properly also denied the petition for adoption.

II
The petition for adoption alleges: "That the said child was placed in Petitioner's home by the Probation Office pursuant to a Juvenile Court Order dated January 21, 1966, and said child has been continuously with Petitioner in her home since said date and that Petitioner has instituted abandonment proceedings since the parents, who are entitled to custody of said child, have neglected said minor child and have been morally depraved and said child has been a dependent child of the Juvenile Court for a period of more than one year continuously prior to the filing of said Petition. That Petitioner is further informed and believes that the father of said minor child will consent to said adoption." The petition for freedom from parental control and custody nevertheless was directed toward both parents (see fn. 2 above). Thereafter, on November 7, 1967, the father freely and willingly, with full knowledge of his rights and responsibilities, signed a consent to adoption in the presence of a representative of the State Department of Social Welfare (see Civ. Code, §§ 224 and 226.1). In his brief he acknowledges that a citation was served upon him and that he appeared at the hearing on December 1, 1967. He was not, however, represented by counsel, and he filed no answer to either proceeding. (7a) He having therefore given his consent to the adoption, there was no issue before the court concerning his abandonment of his daughter.
In Adoption of Oukes, supra, 14 Cal. App.3d 459, the court held that a finding of abandonment by one parent and consent to adoption by the other parent meets the requirements of section 232 of the Civil Code. In so doing the court stated, "We construe the finding of a formal consent to adoption by the father in this case to be tantamount to a finding of an *985 abandonment for the purposes of the statute under scrutiny." (14 Cal. App.3d at pp. 468-469.)
In that case, as in this, the contemplated adoption was by a paternal blood relative. Unlike this case, the court found abandonment by the mother. Both a judgment declaring the minor free from parental custody and control, and decree of adoption were granted and entered. The wife asserted that it was necessary to find that both parents were guilty of abandonment before the former judgment could be entered. Although the result appears correct  that abandonment by one spouse and consent by another  will render a child eligible for adoption by the person who has filed the petition for adoption in connection with which the consent is given (see In re Morrow, supra, 9 Cal. App.3d 39, 46, fn. 5), any implication that a consent to an adoption by a blood relative is an unconditional surrender of control and custody which could support an abandonment for the purposes of adoption by another is unnecessary and unwarranted.
In re Edwards, supra, 208 Cal. 725, which is reviewed in Adoption of Oukes, supra, does not cover the situation of a consenting parent. It merely holds that a nonconsenting parent, who is not charged with the custody of the child, cannot be charged with the acts of abandonment of the parent with custody, unless the former has approved of or participated in the acts of the abandoning parent. (208 Cal. at pp. 735-736. See also In re Williams, supra, 133 Cal. App.2d 515, 518; and Moch v. Superior Court (1919) 39 Cal. App. 471, 476-477 [179 P. 440].)
(8) The question is governed by the general principle that an offer to permit the adoption of a child does not of itself prove an intent to abandon. (See In re Salazar, supra, 205 Cal. App.2d 102, 107; Guardianship of Rutherford, supra, 188 Cal. App.2d 202, 208; Guardianship of Romine (1949) 91 Cal. App.2d 389, 393 [205 P.2d 733].) It is concluded that the court could not transmute the father's consent to the adoption of his daughter by his own mother, into an unqualified abandonment under subdivision (a) of section 232 of the Civil Code.[3]
(7b) The question of whether the evidence was sufficient, within the principles discussed above, to sustain an abandonment by the father is rendered moot on two principles. In the first place, In re Williams, supra, indicates that upon finding that the child had not been abandoned by the mother the court should have denied the petition for freedom from parental control in toto (see 133 Cal. App.2d at p. 518).
*986 In the second place, the father never received a hearing on the issues presented by the allegations of his mother's petition (see fn. 2 above). The findings and judgment each recite, "... and ROBERT EARL RODGERS, the natural father of said minor child, and one of the respondents herein, being personally present in Court and not represented by counsel, ..." The record fails to bear out these recitals.
The minutes reflect that the appearances at the hearing were by counsel on behalf of petitioner, and counsel for "respondent." The stipulations were entered into by counsel. The only mention of the father is as follows: "Counsel for respondent moves to have all witnesses excluded; whereupon ... Robert Rodgers ... are duly sworn and placed under the rule of the Court." Subsequently he was called as a witness on behalf of the petitioner.
The reporter's transcript indicates that counsel for the mother was listed as for "Respondent," although he later indicated "Ready for the respondents." Any discrepancy was cleared up by the judge, who announced that the respondent was the mother of the child. No mention was made of the father. Counsel for the mother made a motion to exclude witnesses and stated that he had one witness who was not a party. That witness was joined by eight witnesses, including the father, who apparently were ushered into the courtroom by the grandmother's attorney. The nine witnesses, plus a second introduced by the attorney for the mother, were then sworn. All were then instructed by the judge, who concluded, without mention of the father, "... with the exception of the first witness ... all of those who now have been sworn may return to the corridor." The record indicates that all except the first witness left the courtroom.
At the conclusion of the examination of the petitioning grandmother's fourth witness by the court, counsel for the petitioner directed the witness to have Bob Rodgers, the father, come in. Following a recess Rodgers testified on behalf of the petitioner concerning his former wife's activities. Cross-examination extended to his activities, and the court pursued the same subject. At the conclusion of his testimony he was ordered to stand by, but he left the courtroom under the standing order excluding witnesses.
Civil Code section 237.5 provided at the time of the hearing (Stats. 1965, ch. 1530, § 3, p. 3624), and still provides (cf. Stats. 1969, ch. 489, § 2, p. 1098) in pertinent part, "At the beginning of the proceeding on a petition filed pursuant to this chapter, the judge shall first read the petition to the child's parents, if they are present ... and ... upon the request of either parent the judge shall explain any term or allegation contained therein and the nature of the proceeding, its procedures, and *987 possible consequences. The judge shall ascertain whether the minor and his parent have been informed of the right of the minor to be represented by counsel, and if not, the judge shall advise the minor and the parents, if present, of the right to have counsel present. The court ... if they are unable to afford counsel, shall appoint counsel to represent the parents. The court may continue the proceeding for not to exceed seven days, as necessary to make an appointment of counsel, or to enable counsel to acquaint himself with the case, or to determine whether the parents are unable to afford counsel at their own expense."
The record fails to indicate any attempt to comply with the foregoing provisions insofar as the father is concerned. In County of Alameda v. Espinoza (1966) 243 Cal. App.2d 534 [52 Cal. Rptr. 480], this court, in analyzing the provisions for counsel in the Juvenile Court Law, observed, "The parent is entitled to notice and an opportunity to be heard at all procedural steps, is entitled to counsel, if indigent (§§ 634, 659, subd. (e) and 679) and precise standards are delineated as conditions precedent to either temporary (§§ 628, 635 and 636), or permanent (§ 726) removal from custody. In other words, the proceedings embrace the parent and child, not merely the latter." (243 Cal. App.2d at p. 546.) So here, when the relationship of parent and child, not merely the custody of the child is at stake, it is imperative that the parent have an opportunity to be heard. The failure to treat the father as a party to the proceedings, and the failure to comply with the statutory mandate of section 237.5 necessitates a reversal of the findings and judgment with respect to the father on those grounds alone.
The judgment is affirmed insofar as it adjudges that the natural mother has not abandoned the minor child and that the child is not an abandoned child with respect to the mother, and insofar as it denies the petition of the grandmother for adoption. The judgment is reversed insofar as it adjudges that the natural father has abandoned the minor child and declares the child abandoned by her father. Let appellant Rodgers recover from respondent Olson one-half the costs of the appeal jointly undertaken by himself and appellant Walker, and let respondent Olson recover one-half of her costs of appeal from appellant Walker.
Molinari, P.J., and Elkington, J., concurred.
NOTES
[1] On April 25, 1968, a hearing was held in the juvenile proceedings as a result of a continuance of prior proceedings for annual review on January 3, 1968. The probation officer recommended that the child be continued as a dependent child of the court in the care and custody of the probation officer for placement with her mother. After hearing evidence presented by the grandmother and the mother, the court accepted the recommendation of the probation officer and ordered placement with the mother effective that day, continued the matter until June 6, 1968, for transfer of proceedings to San Francisco, and ordered an annual review on March 13, 1969.
[2] The petition alleges: "[¶] II That said child is person defined in Section 232 of the Civil Code, and acts amendatory thereto, and that said person should be declared free from the custody and control of her parents. [¶] III That said person has been left in the care of EDITH M. WALKER without any provision for support, without communication from said parents, with the intent on the part of said parents to abandon said person continuously since the 21st day of January, 1966, to the time of filing this Petition. [¶] IV That said person has been a dependent child of the Juvenile Court pursuant to that Court's Order in a Juvenile Action File No. 7056 in which the parents of said minor child have been deemed to have neglected said minor child and or have been morally depraved or habitually intemperate and said parents have been deprived of the custody of said dependent child because of such neglect, intemperance or moral depravity since January 21, 1966, to the time of filing this Petition."
[3] Adoption of Barnett (1960) 54 Cal.2d 370 [6 Cal. Rptr. 562, 354 P.2d 18] which upheld the adoption when the natural parent did give consent to adoption by the adoptive mother alone, after the adoptive parents to whom the original consent was given were divorced, does not require that result when no such modification of consent is given.