Filed 6/23/14  In re A.L. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.L., a Minor.<br><br>T.F.,<br><br>    Petitioner and Respondent,<br><br>      v.<br><br>R.L.,<br><br>    Objector and Appellant. | G049191<br><br>(Super. Ct. No. 13AD000050)<br><br>O P I N I O N |

          Appeal from an order of the Superior Court of Orange County, Ronald P. Kreber, Judge.  Affirmed.

          Roni Keller for Objector and Appellant.

          Jarvis, Kriger & Sullivan, Kevin Harrison and Siobhan M. Bishop for Petitioner and Respondent.

T.F. (hereafter Grandmother) filed a petition to terminate her son-in-law's parental rights and adopt her granddaughter A.L. pursuant to Family Code section 7822.[1] R.L. (hereafter Father) was convicted of killing A.L.'s mother and maternal grandfather. On appeal, R.L. contends the court should not have granted the petition because there was insufficient evidence he intended to abandon A.L. as required by section 7822. Finding his contention lacks merit, we affirm the order.

I

A.L.'s mother (hereafter Mother) and Father divorced in 2010 when A.L. was six years old. The court ordered joint legal and physical custody. Father was ordered to pay $1,174 in monthly child support.

A.L. was diagnosed with a rare congenital medical condition, a seizure disorder, and an attention deficit disorder. Her parents disagreed about her educational placement. On May 3, 2011, following a contentious ex parte hearing on this issue, Father shot and killed Mother and A.L.'s maternal grandfather. Father was immediately arrested.

A.L. has been living with her maternal grandmother since the night of the murders. On May 13, 2011, Grandmother filed for guardianship and she became A.L.'s guardian on August 26, 2011. A.L. sees a therapist once a week to help cope with the loss of her mother and grandfather. She is thriving in Grandmother's care and doing well in school and extracurricular activities.

In September 2012, Father was convicted of two counts of first degree murder, firearm enhancements, and multiple special circumstances. In November 2012 the trial court sentenced him to two consecutive life sentences without the possibility of

---

[1] All further statutory references are to the Family Code. Section 7822 describes the circumstances under which a child may be freed from parental custody and control based on abandonment.

parole plus 50 years in prison. His appeal from this criminal case is pending before this appellate court. (*People v. Lehmann* (G047629, app. pending).)

On February 14, 2013, Grandmother filed a petition for freedom from parental custody and control on behalf of A.L (hereafter the Petition). The Petition alleged Father failed to communicate with his daughter since his arrest, a time period of nearly two years. It was alleged Father had not paid child support since his arrest and had made no attempt to communicate with his daughter. Grandmother asked for the court to terminate Father's parental rights so that she could adopt A.L. "and become legally what I am, both factually and emotionally, in [A.L.'s] eyes—her parent and constant caregiver." Grandmother also filed an "adoption request" form.

In April 2013 a court investigator from the probate court services department filed a report recommending the court grant the Petition. She recounted the basis for the Petition and her interviews with Grandmother and A.L. Father had not responded to the investigator's letter. A.L., who was now nine years old, stated she understood the nature of the Petition and wished to be adopted by Grandmother. The investigator observed A.L. appeared to be well adjusted and to have a close bond with Grandmother. The investigator concluded, "[A]fter interviewing the minor, it appears [Father] has not been actively involved in her life. On the other hand, [A.L.] appeared to be well bonded with [Grandmother] and they appeared to share a very affectionate relationship. [¶] Based upon the foregoing, it appears [A.L.] should be declared [free] from the custody and control of [Father]. It is believed that the termination of the natural father's parental rights would serve the best interest of the minor and she may be eligible for adoption."

The court appointed counsel to represent Father. He made requests to change the venue, dismiss the case, and continue the trial date. Grandmother opposed these requests. She also asked the court to review the circumstances of Father's

3

conviction and consider terminating his parental rights under section 7825 [parent convicted of felony and facts of crime prove parent's unfitness].)

After several continuances, Father submitted a declaration stating he was unable to provide financial support for A.L. because he was incarcerated and could not earn any income. He explained that once Grandmother became A.L.'s guardian, she would not allow Father to have any contact with his daughter. The court ordered, as part of the guardianship, that he not have any contact with A.L. Father alleged paternal grandmother's attempts to visit A.L. were thwarted by Grandmother. He concluded, "I want the best for my daughter [A.L.] and I believe that having her father in her life is in her best interests." He filed a memorandum of points and authorities stating he was appealing his criminal conviction and he wished to retain his parental rights. He argued, "Because [Father was] prohibited from communicating and/or contacting his daughter, this matter should be dismissed as it is not ripe."

Father requested and the court agreed to take judicial notice of the guardianship orders. As part of the guardianship, the court ordered paternal grandmother could visit A.L. "as recommended by the therapist, Dr. Kate Stuhr Mack." The court ordered paternal grandmother to attend individual therapy to become familiar with how to relate to a grieving child, and "begin the process of rebuilding the relationship with A.L. by sending her cards or simply notes to let her know that she is in her thoughts, nothing more." A.L. could choose to call paternal grandmother and have supervised visits when she was ready. The court ordered "there will be no discussion regarding criminal proceedings and no visits with Father whatsoever, and no contact with the Father."

The court held a hearing on September 27, 2013, and considered Grandmother's and Father's testimony. Because the material facts were undisputed, counsel for both sides focused their closing arguments on whether there was sufficient evidence Father intended to abandon A.L. The court granted the Petition, stating, "[T]he court feels that there certainly has to be some guidelines set forth in cases like this. Even

4

in our county, we have a number of spouses that have been murdered with children, and the court should not be in the business of making victims out of victims. And here the child is not . . . only a victim once . . . because her mother was taken from her, but she also lost her father. [¶] The court notes that [Father] did not use the legal process to see the child. And I do not know how successful that would have been, because . . . it would appear that the district attorney's office would have controlled that situation." The court commented Father found the funds to retain a private attorney to defend himself in the criminal case.

The court determined, "Regarding no intent, I do think that the court would use the [section] 7822 factors and also the [section] 7825 factors." The court stated it was aware of the case authority holding parental rights cannot be terminated based on section 7825 where there is an appeal pending of the felony conviction and there is no final judgment. It reasoned, "[T]he best interest of the child would be that the court . . . not just stand by. And once an appeal is filed on this type of case, it's going to take many years for it to be resolved. I don't know how society could ask a child or have the best interests of the child and say, 'well, you can't do anything. You can't use that felony conviction because it's not a final judgment.' So the courts really could use guidelines in this type of a situation."

It granted the petition applying section 7822, concluding "the child has been left without provisions by the parent in this case, the parent being [Father]. And the child was left by [Father] and the care and custody went to another person by default when the mother was basically executed. And that's been for a period of six months or more." The court found true the allegations raised in Grandmother's petition that she has exercised exclusive care of A.L. since May 2011, "[a]nd it's true that the court found [Father] failed to have communication with [A.L.] for a period in excess of one year and without any provision or support. [¶] And so—also that the child is special needs and that [Grandmother] is in the best position to handle that particular situation." The court

5

stated it had heard the testimony and considered the investigator's report. It ruled there had "been an abandonment of lack of contact and lack of financial support." The court determined A.L.'s best interests required termination of parental rights.

II

The court concluded Father abandoned A.L. within the meaning of section 7822 by failing to support or communicate with her for over two years. Section 7822, subdivision (a)(2), provides a proceeding to free a child from parental custody maybe brought if, "The child has been left by both parents or the sole parent in the care and custody of another person for a period of six months without any provision for the child's support, or without communication from the parent or parents, with the intent on the part of the parent or parents to abandon the child."

"A declaration of freedom from parental custody and control . . . terminates all parental rights and responsibilities with regard to the child." (§ 7803.) Consequently, a finding of abandonment must be supported by clear and convincing evidence. (§ 7821.) However, on appeal, the clear and convincing evidence standard disappears and we must decide if there is substantial evidence to support the trial court's finding of abandonment. (*In re Mark L.* (2001) 94 Cal.App.4th 573, 580; *Adoption of Oukes* (1971) 14 Cal.App.3d 459, 466.)

"'It is neither the duty nor the right of this court to resolve conflicts in the evidence, pass on the credibility of the witnesses, or determine where the preponderance of the evidence lies. These are all matters to be decided by the trier of fact in the court below. The power of any appellate court commences and terminates with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of respondent on appeal and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to

6

substitute its deductions for those of the trier of fact. All evidence favorable to respondent is assumed true and the unfavorable is discarded. If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed.' [Citations.]" (*Adoption of R. R. R.* (1971) 18 Cal.App.3d 973, 983.) And our paramount responsibility is to act in A.L.'s best interest. (§§ 7800 [purpose of termination proceedings is to serve child's welfare and best interest], 7801 [mandating liberal construction of termination proceedings to protect child's interests and welfare]; *In re Rose G.* (1976) 57 Cal.App.3d 406, 425 (*Rose*) [issue in termination proceeding not "'[w]ho has the right to custody of the child?'" but what will promote and protect the child's best interest?].)

It is undisputed Father had no contact with A.L. whatsoever from May 2011 to the date of the hearing in September 2013. This period exceeds the one-year period required in section 7822 for a finding of abandonment. Consequently, a presumption of abandonment arose. (*Rose, supra,* 57 Cal.App.3d at p. 423.) Father then had the burden to introduce evidence to contradict the presumed fact of his intent to abandon A.L. (*Id.* at pp. 423-424.)

Rather than rebut this presumption by pointing to evidence in the record, Father asserts on appeal there was insufficient evidence of an intention to abandon A.L. and he complains his lack of contact with A.L. was not his fault. He relies upon the guardianship order prohibiting direct contact with A.L. He also maintains he is blameless for the lack of financial support because he cannot earn money in prison. We conclude this evidence was insufficient to rebut the presumption of his intentional abandonment.

We first address the no-contact order. As the trial court noted, in two years Father has never asked his attorney or family members to help him challenge the no-contact order (entered just a few months after his arrest). Although Father may not have been ultimately successful in modifying the no-contact order, his lack of trying allows an inference he really had no interest in maintaining a relationship with his daughter. Moreover, the court order prohibiting direct contact did not mean Father was

7

required to stop caring about his daughter's well being. An interested parent could have sought information about his or her child's welfare via indirect means. Our record contains no evidence Father asked his family members to check on A.L.'s health or welfare while she was living with Grandmother. For over two years he did not concern himself with A.L.'s various medical ailments, challenges, and needs.

We recognize the guardianship order contemplated that paternal grandmother would take steps to establish a relationship with A.L., and Grandmother stated she did not object to letting paternal grandmother (who lives in Missouri) have contact with A.L. Currently, paternal grandmother's contact with A.L. is limited to gifts and letters. Grandmother explained A.L.'s therapist determined it was not in A.L.'s best interests to permit direct contact. Grandmother stated she also is in communication with paternal grandmother and sends her photographs. Grandmother testified paternal grandmother had never given her cards or letters from Father to give to A.L., and she had never asked that Father be allowed to contact A.L. The above evidence establishes paternal grandmother's intent to maintain a relationship with A.L., but does nothing to establish Father had a similar interest.

At the hearing, Father admitted he did not make any "specific requests" in the guardianship case. There is no evidence he objected to the guardianship or opposed placement with Grandmother. Although he claimed to have asked his mother to seek visitation, there was no evidence suggesting Father intended to use his mother as an indirect means to find out about his daughter or maintain a connection with her.

Incarcerated parents have limited resources, but they are not without resources. In reviewing dependency appeals, we have seen many incarcerated parents do remarkable things to maintain bonds with their children. Indeed, it appears the only time Father has shown any interest in A.L. was after receiving notification Grandmother desired to adopt her. He objected to the Petition and hired counsel to file this appeal.

8

This last observation brings to light the next issue—Father's financial status. We do not doubt Father's testimony he could not earn income in prison. However, he did not provide any direct evidence to substantiate his claim he lacked the financial resources to help support his daughter during his incarceration. Our record contains no evidence establishing Father was financially destitute. His ability to retain private trial counsel to represent him in the criminal action, and in the current appeal, suggests otherwise.

"Intent to abandon . . . may be found on the basis of an objective measurement of conduct, as opposed to stated desire." (*Rose, supra,* 57 Cal.App.3d at p. 424.) In this case there is nothing from which it can be inferred from Father's conduct over the past two years that he desired to have any meaningful contact with his daughter. To the contrary, his silence and passive acceptance of the no-contact order (filed back in 2011) fully supports the presumption of intent to abandon. We conclude the trial court's ruling was supported by substantial evidence.

III

The order is affirmed. Respondent shall recover her costs on appeal.

O'LEARY, P. J.

WE CONCUR:

BEDSWORTH, J.

ARONSON, J.

9